Gary Leroy DOUGLAS,
Petitioner-Appellant,

v.

Hoyt C. CUPP, Superintendent, Oregon
State Penitentiary,
Respondent-Appellee.

No. 77–1265.

United States Court of Appeals,
Ninth Circuit.

July 13, 1978.

Gary L. Douglas, in pro per.

Rhidian M. M. Morgan, Asst. Atty. Gen., Salem, Or., for respondent-appellee.

Before SMITH,* ELY and CARTER, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Gary Leroy Douglas appeals from a judgment of the United States District Court for the District of Oregon (Otto R. Skopil, Jr., Chief Judge), dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial held in the circuit court for Coos County, Oregon, Douglas was convicted of burglary in the first degree. He was awarded an indeterminate sentence, the maximum term not to exceed fifteen years.

The Oregon Court of Appeals affirmed this conviction without opinion, 23 Or.App. 221, 541 P.2d 833 (1975), and the petitioner did not seek review of the case in the Oregon Supreme Court.[1] Subsequently, petitioner sought, and was denied, federal ha-

* The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The state acknowledges that all state remedies have been exhausted, and we have been directed to nothing in the record which would indicate that the deliberate bypass doctrine is relevant in this case.

beas corpus relief. He presently appeals that judgment of the district court.

Petitioner Douglas presents us with a single issue on this appeal. At trial, the state prosecutor called Douglas' arresting officer as a state witness. After substantial questioning, Trial Tr. at 154–159, the following colloquy took place between the prosecutor and the arresting officer.

Q. Who arrested Mr. Douglas?

A. I did.

Q. Did he make any statements to you?

A. No.

Prosecutor: That's all the questions I have.

[Trial Tr. at 158–159.]

Douglas argues here that his constitutional rights were violated when the prosecutor introduced evidence concerning the petitioner's exercise of his fifth amendment right to remain silent.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court indicated that "[t]he prosecution may not . . . use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation." 384 U.S. at 468 n. 37, 86 S.Ct. at 1625. More recently, that Court has held that the use for impeachment purposes of a defendant's silence at the time of arrest and after the receipt of *Miranda* warnings is impermissible. Writing for the Court, Justice Powell noted that:

[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. [*Doyle v. Ohio*, 426 U.S. 610 at 618, 96 S.Ct. 2240 at 2245, 49 L.Ed.2d 91 (1976)].

See also *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

The Court felt that such silence was necessarily "insolubly ambiguous," and therefore—apart from any possible constitutional infirmities—was of dubious probative value.

In the instant case, the state prosecutor elicited just that kind of testimony forbidden by the Supreme Court in *Miranda v. Arizona* and *Doyle v. Ohio*. While there was no reference to *Miranda* warnings, there was purposefully elicited the fact of silence in the face of arrest. The introduction of such testimony acted as an impermissible penalty on the exercise of the petitioner's right to remain silent.

While perhaps inadvertent, the placement of the suspect question at the end of the arresting officer's testimony gave it a prominence which it would not have had, had it simply been recounted as part of a description of the events culminating in the petitioner's arrest. Thus it is plausible to suppose that a juror might have inferred from the offending testimony that the petitioner was guilty of the crime charged, and that his alibi was a later fabrication and without foundation. Given the equivocal nature of much of the evidence presented at trial, and the rather unusual, perhaps even bizarre, events recounted by both the prosecution and the petitioner, we cannot say, as a matter of law, that the prosecutor's question was harmless, beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, we reverse the judgment of the district court, and remand the case for issue of the writ.

JAMES M. CARTER, Circuit Judge, dissenting:

I am not convinced that Supreme Court precedent compels the ruling in this case. Furthermore, even if the majority is correct that constitutional error occurred, the error is harmless beyond a reasonable doubt.

To explain my reluctance to join the majority, I must elaborate slightly on the facts. The testimony of the arresting offi-

cer concerning Douglas' silence after his arrest was introduced during the prosecution's case-in-chief. However, it appears to be nothing more than an inadvertent question asked in an attempt to elicit a complete description of the event of Douglas's arrest. The question and answer were not argued to the jury as indicative of guilt, or relied upon in any other manner by the prosecution.

After the prosecution's case, Douglas put on a defense in which he presented an alibi to the jury. The evidence of Douglas's silence in the face of his arrest was never mentioned for impeachment purposes by the prosecution. In short, after asking the single disputed question in an unargumentative context, the prosecution never affirmatively incorporated the answer into either its case-in-chief or its rebuttal.

To date the case law from the Supreme Court holds that the prosecution cannot introduce evidence of an accused's silence in the face of *Miranda* warnings either as affirmative proof of guilt or for purposes of impeachment. *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Opinion of the Court and J. Stevens, dissenting). *See United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). But these cases do not establish a per se rule that under no circumstances can evidence of silence after an arrest be admitted without violating the Constitution. Before an error of constitutional dimension occurs, the evidence of an accused's silence must be used for an impermissible purpose.

In its analysis of this problem the Supreme Court has reiterated that "silence at the time of arrest may be inherently ambiguous even apart from the effect of *Miranda* warnings . . . ." *Doyle v. Ohio, supra*, 426 U.S. 617 n. 8, 96 S.Ct. 2244. *See United States v. Hale, supra*. The introduction of such evidence at trial absent comment can-

not alone be said to unfairly prejudice a defendant. Only when the prosecution affirmatively uses this evidence to suggest guilt or to impeach a defendant's defense does the unfairness occur. A close reading of *Doyle* and *Hale, supra*, shows that the prosecution overtly used the defendants' silence against them. This is different from our case.

Nevertheless, I recognize that the mere elicitation of the disputed testimony could be characterized as a suggestion of guilt. Although I disagree with this approach, even if the existence of constitutional error is conceded for the sake of argument, the error was harmless beyond a reasonable doubt. The testimony elicited by the prosecution in this case consisted of nothing more than the naked remark that Douglas made no statement to his arresting officer. The evidence was not elicited in the context of testimony about the giving of *Miranda* warnings or of interrogation by the arresting officer. Even if a juror assumed that *Miranda* warnings had been given, evidence of silence in the face of such warnings is of minimal probative value.

In addition, the testimony of the victims of the burglary provided extensive affirmative evidence of Douglas's guilt, including his admission of guilt when confronted by the victims. Any possible adverse impact of the prosecutor's question must have been minimal. I would affirm the judgment of the district court.