UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary A. NEWMAN, Defendant–
Appellant.

No. 90–10387.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1991.

Decided Sept. 11, 1991.

Negatu Molla, Snell & Wilmer, Tucson, Ariz., for defendant-appellant.

Robert L. Miskell, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before CHOY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

SNEED, Circuit Judge:

Appellant, Gary A. Newman, appeals from his criminal conviction for setting fire to lands within the Coronado National Forest in southern Arizona. He argues that he was prejudiced by testimony regarding his post-arrest silence. We agree and reverse Newman's conviction.

## I.

### FACTS AND PROCEEDINGS BELOW

On May 29, 1989, two Forest Service special agents (Boerman and McCormick) began surveillance of fellow employee Gary Newman. They had previously installed an electronic tracking device on defendant's Forest Service pickup truck. At approximately 9:40 a.m., the agents spotted defendant's truck travelling north on Highway 83. They followed defendant's vehicle for approximately two miles on the highway. Agent Boerman then continued the surveillance on foot after the defendant turned off the highway and parked his truck on a "two-track" road. Except for a ten-minute interval during which Boerman returned to his vehicle for radio batteries, the defendant's truck was continuously in Boerman's sight for an hour. During this time, Boerman testified that the truck remained empty.

At approximately 10:50 a.m., Boerman saw the defendant return to the truck from the north and drive off. Four minutes

---

* Honorable Robert J. Kelleher, District Judge for the Central District of California, sitting by des-   ignation.

later, smoke was spotted. Boerman then proceeded to the site of the fire which was located seventy-five yards from the north fence of Black Oak Cemetery, approximately eight minutes by foot from where the defendant's truck had been parked. Agent McCormick also proceeded to the site of the fire. His testimony was that he heard defendant report the fire over the radio at approximately 11:00 a.m. Other witnesses at the trial appearing on behalf of the defense contradicted McCormick's testimony.

Upon arriving at the cemetery, Agent McCormick stopped to question Mrs. May Gates who had arrived at the cemetery at approximately 9:45 a.m. that morning to visit her husband's grave. During the relevant time period she had a clear view of the pasture where the fire started. She heard a man's voice utter two or three sentences, listened for a reply, but she heard nothing more. During this time, however, Mrs. Gates saw no one at either the cemetery or at or near the fire before McCormick's arrival.

Defendant arrived at the scene of the fire at approximately 11:10 a.m. When asked by agent McCormick why he had started the fire, defendant denied his involvement. Defendant also declined to give any further statement to the agents; nor did he give a statement to his supervisor. The following day, however, defendant gave a detailed explanation of his movements of the previous morning. In numerous ways, this explanation was inconsistent with the agents' observations of his movements.

Agent Douglas of the Forest Service investigated the area and determined that the cause of the fire was incendiary in nature. On the day of the fire, defendant had two match books with him in his truck from which some matches were missing. The agents also located a portable radio in defendant's truck.

On October 18, 1989, a grand jury indicted Newman under 18 U.S.C. § 1855. After a five day trial, a jury found Newman guilty on March 26, 1990. He was given an eight month sentence, four months of

which were to be served in jail and the remaining four months under "house arrest." He was also placed on supervised release for three years and ordered to pay restitution of $55,173.

## II.

## DISCUSSION

### A. Defendant's Post–Arrest Silence

As stated above, Newman denied starting the fire when questioned by Agent McCormick. Thereafter, McCormick read Newman his *Miranda* rights. Newman told Agent McCormick that he did not want to talk at that point. He indicated that he might give a statement once his supervisor arrived. However, when his supervisor did arrive, Newman again declined to speak to the agents.

At trial, during the prosecution's direct examination of Agent McCormick, the witness described the sequence of events following defendant's arrest at the fire scene:

Q: Did you advise him of his rights?

A: I did at that point in time.

Q: And what was decided at that point?

A: Mr. Newman would remain silent. He wished not to make a statement.

Defense counsel objected and requested a curative instruction from the judge. The judge said "Let's take it to the end of this inquiry and then, if necessary, I'll give an instruction." Defense counsel accepted this decision. The prosecution continued:

Q: He said that he wanted—he didn't want to say anything. Did he say that he would be willing to later, though?

A: At that point in time he said he might be willing later to give a statement when his supervisor, Terry Dyess, arrived.

Q: And was his supervisor radioed to come to the location?

A: Yes, just immediately after this point in time.

Q: Okay.

At that point, the court gave a curative instruction telling the jury not to consider

Newman's silence "for any purpose whatsoever." [1]

Questioning continued and the prosecutor asked the witness whether Newman made a statement once his supervisor arrived. Defense counsel again objected and the court overruled the objection. In response to the prosecution's question, McCormick said: "No statement regarding the events was made. The statement was made by Mr. Newman that he was not to talk to me." Shortly thereafter, the trial broke for lunch.

After the lunch break, outside of the presence of the jury, defendant moved for a mistrial. The trial judge denied the motion. The court did give a second limiting instruction to the jury when the trial resumed.[2]

### B. Analysis

■ The Supreme Court has clearly stated that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). The prosecutor in this case, on more than one occasion, unnecessarily elicited testimony from Agent McCormick regarding Newman's decision to remain silent after his arrest. Newman was clearly entitled to remain silent if he so desired. Nor should this silence be used to suggest guilt. In *United States v. Wycoff*, 545 F.2d 679 (9th Cir. 1976), this court explained the effect of

informing the jury that the defendant remained silent. "The natural tendency of the use of the testimony in this manner is to prejudice the defendant by attempting to create an inference of guilt in the jury's mind." *Id.* at 681; *see also United States v. Valencia*, 773 F.2d 1037, 1040 (9th Cir. 1985) (reaffirming that it is constitutional error to admit evidence that a defendant chose to exercise the right to remain silent after arrest). Our review of Agent McCormick's testimony and the prosecutor's questions establishes that a *Doyle* violation occurred in this case.

Our conclusion is not weakened by the Supreme Court's recent decision in *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). There the prosecutor asked the defendant on cross-examination why he had never told his exculpatory story to the police. Defense counsel objected. The trial judge sustained the objection and the defendant never answered the question. The jury was instructed to disregard the question. The prosecutor made no further references during trial to the defendant's post-arrest silence. The Court held that *Doyle* bars *the use* of a defendant's post-arrest silence for impeachment purposes. *Id.* at 763, 107 S.Ct. at 3107. The Court concluded that the prosecutor in *Miller* was not allowed to undertake impeachment or call attention to Miller's silence. *Id.* at 764, 107 S.Ct. at 3108.

The conduct of the prosecutor in this case is much more egregious than that in *Miller*. The prosecutor here elicited testimony regarding Newman's decision to remain silent on three occasions. There were

---

**1.** The judge gave the following instruction:
   The jury is instructed that a person being interrogated by a law enforcement officer, and having been advised of his rights, is not required to say anything. If he decides not to say anything, either at that point or any other point, his decision not to speak, that is, his not saying anything, cannot be used against him or considered against him for any purpose whatsoever.
   Reporter's Transcript at 250–51.

**2.** The judge said:
   Members of the jury, I do want to state to you an important matter for you to keep in mind about the testimony that came in before the lunch break, and that is this: Mr. McCormick

testified to a series of conversations with the defendant. If at one or more points the defendant decided not to say anything, whether that was before or after consulting with his supervisor, doesn't make any difference. You are not to draw any inference whatever against the defendant by reason of that. By the same token, you are not to draw any inference or do any speculating about what may or may not have been said between the defendant and his supervisor. In other words, that occurrence during the series of conversations is not to be considered by you against the defendant for any purpose.
Reporter's Transcript at 272–73.

questions *and* answers that focused on Newman's silence. We hold that the prosecutor's conduct violated Newman's due process rights under the Fourteenth Amendment.

■ We now must decide whether the error was harmless beyond a reasonable doubt. *Wycoff,* 545 F.2d at 682 (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). When deciding whether the prosecutor's conduct was harmless, we will consider the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt. *See Scarborough v. Arizona,* 531 F.2d 959, 962 (9th Cir.1976); *see also Ahlswede v. Wolff,* 720 F.2d 1108, 1110 (9th Cir.1983) (holding *Doyle* error was harmless in light of overwhelming evidence of defendant's guilt).

We conclude that the admission of testimony regarding Newman's post-arrest silence was not harmless beyond a reasonable doubt. The prosecutor elicited several statements from Agent McCormick regarding Newman's silence. Those comments were extensive and prejudicial. Notwithstanding the instructions from the trial judge, the effect of those statements, intended or otherwise, was to suggest to the jury that Newman must have been guilty because an innocent person would not have remained silent.

Our decision is bolstered by the overall weakness of the government's case. No one saw Newman start the fire. The evidence of his guilt is all circumstantial. We find that the facts of this case establish that the error in admitting the testimony regarding Newman's silence was not harmless beyond a reasonable doubt.

In light of our holding that the prosecutor violated *Doyle* and the due process clause by eliciting testimony about Newman's post-arrest silence, and because we find that this error was not harmless, we do not reach the other points raised by Newman on appeal. Newman's conviction is reversed and this case is remanded to the district court.

REVERSED.