UNITED STATES of America,
Plaintiff–Appellee,

v.

Stephen BAKER, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Philip L. CABAN, Defendant–Appellant.

Nos. 92–10552, 92–10581.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1993
as to Baker.

Submitted May 6, 1993 *
as to Caban.

Decided July 15, 1993.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Edward H. Kubo, Jr., Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: GOODWIN, TANG, and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

Stephen Baker and Philip L. Caban appeal their convictions and sentences under the Sentencing Guidelines for bank robbery in violation of 18 U.S.C. § 2113(a). We reverse the convictions and remand for a new trial because appellants' due process rights were violated when the government impermissibly commented in closing rebuttal argument on their post-*Miranda* silence.[1]

## BACKGROUND

On October 2, 1991, two men wearing nylon stockings over their heads entered the Kaneohe branch of Territorial Savings and Loan. One of the men held what appeared to be a handgun, and instructed the tellers to open their cash drawers. The other man then jumped over the teller counter and took money out of two of the drawers. The two men left the building with over five thousand dollars in cash.

Baker and Caban were arrested a few days later and charged with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). At the time of their arrest, Caban was in possession of eight-hundred and fifty dollars in cash, and Baker one-hundred and thirty dollars. In May 1992, the defendants were tried and convicted by a jury in the district court.

The government's case largely consisted of circumstantial evidence. The bank tellers were not able to identify either Baker or Caban, and the tellers' descriptions of the bank robbers were not consistent.[2] The gov-

Birney Bervar, Asst. Federal Public Defender, Honolulu, HI, for defendant-appellant Baker.

Wayne H. Tashima, Honolulu, HI, for defendant-appellant Caban.

---

1. Additional issues briefed by the parties and relevant on remand are addressed in a separate memorandum decision filed concurrently with this opinion.

2. First, the tellers' testimony is not consistent as to the hair color of the bank robbers. One teller testified that the bank robbers had "brownish" hair, and that one may have had light brown hair with blond stripes; another teller described the robbers as having brown hair; and a third teller said one of the robbers had dark blond hair. In fact, none had blonde hair.

The tellers' testimony is also inconsistent as to the size of the bank robbers. Further, the tellers described the robbers' age as between 20 and 30

ernment did present a good deal of evidence, however, supporting the defendants' guilt. The tellers identified a replica 9mm handgun found in the passenger compartment of Caban's car at the time of his arrest as appearing to be the one used by the bank robbers, and a blue and white shirt found in Caban's bedroom as looking like the shirt worn by one of the robbers.

Further, the government introduced the testimony of Emily Lopez. Lopez knew both Baker and Caban, and lived in the same rooming house as Baker. She testified that only about an hour after the robbery occurred, Baker and Caban entered her room and shut the door and windows. The two men then threw a bundle of clothes onto the floor. Lopez testified that a large amount of cash, in all denominations, was wrapped up inside the clothing, and that some of the money was banded together in the type of wrappers she has seen used by banks. Lopez watched Caban and Baker divide up the money. Caban then told Baker to give Lopez all of the one dollar bills, amounting to approximately three or four hundred dollars. Baker also gave Lopez two one hundred dollar bills to give the landlord for Baker's rent. He then instructed Lopez to throw away the bundle of clothes, which she did. Lopez recalls that one of the items of clothing was a shirt with a blue collar.

The government also introduced the testimony of Steven Licari, a friend of Caban. Caban had been staying in a room at Licari's home prior to his arrest. Licari testified that just before the FBI came searching for Caban, Caban had showed him a gold or jade ring Caban had recently purchased.

The government additionally introduced testimony of a number of FBI special agents. Agents Harmon and Gleichenhaus testified about a statement Baker made after his arrest, while he was in an FBI automobile. The agents testified that Baker spontaneously stated, "How did you guys find out?" Further, Agent Ferreira testified about a series of spontaneous statements Baker made at the FBI office. Baker asked Ferreira what the sentence for bank robbery was, and whether his past criminal history would be considered by the judge at sentencing.[3] Finally, Agent Kent testified that while he was escorting the defendants to the courtroom for their first appearance in the matter, Baker said to Caban, "Gee, Why did I have to take you with me?," to which Caban replied, "I don't know."

Baker exercised his Fifth Amendment right not to testify. Caban, however, did testify. Caban claimed that he and Baker were together at the time of the bank robbery, but that the two were gambling. Caban stated that he and Baker won the money Lopez testified about at this gambling game.

The jury found both defendants guilty. The district court sentenced Baker to serve 225 months in prison, and Caban 144 months followed by 3 years of supervised release. Caban's sentence included a two-point increase for obstruction of justice after the district court determined that Caban had testified falsely, and an upward departure of two criminal history levels after the district court determined that Caban's criminal history category did not adequately reflect the seriousness of his criminal history.

## DISCUSSION

Baker argues that he was deprived of due process when counsel for the government during closing rebuttal argument commented on his silence at the time of arrest. The government argues that there was no error because its statements were limited to Baker's post-arrest, pre-*Miranda* silence. Even

---

years old, but Caban is 48 years old. Neither of the robbers was described as having worn glasses, but Caban claims to "wear glasses for reading and for distance." Finally, none of the tellers noticed tatoos on the bank robbers, but both defendants have tatoos on their arms or hands.

**3.** Ferreira admonished Baker that he should not make any other statements or else the Agent would "Mirandize" him. Baker indicated he did not want to make any statements, but then proceeded to continue to make utterances that implicated himself and his co-defendant. These statements were suppressed by the district court, and the government does not challenge this ruling. The suppressed statements included Baker's asking if it would matter for sentencing purposes that he was not the person carrying the gun, and if it would matter that the gun used was a fake gun.

if there were error, the government argues it was harmless beyond a reasonable doubt. We reject the government's argument. There was constitutional error and the error was not harmless beyond a reasonable doubt.[4]

### A. Due Process

■ Due process requires that defendants be able to exercise their "constitutional right to remain silent and not be penalized at trial for doing so." *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1280–81 (9th Cir. 1992). The Supreme Court has explained that the government may not use a defendant's silence "at the time of arrest and after receiving *Miranda* warnings." *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *see also Negrete–Gonzales,* 966 F.2d at 1281. The Court recently restated, however, that "the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, *Jenkins v. Anderson,* 447 U.S. 231, 239 [100 S.Ct. 2124, 2129, 65 L.Ed.2d 86] (1980), or after arrest if no *Miranda* warnings are given, *Fletcher v. Weir,* 455 U.S. 603, 606–607 [102 S.Ct. 1309, 1311–1312, 71 L.Ed.2d 490 (1982) ] (*per curiam* )." *Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353 (1993).(full citations omitted).

The relevant portion of the government's closing rebuttal argument reads as follows:

> **Mr. Kubo:** Reason and common sense in light of background experience. You're under arrest for bank robbery. What bank? I didn't do it. What are you talking about? Wouldn't that be the natural human response if you did it—not and not say anything more? There was no word from them after they were told what they were being arrested for.
>
> . . . .
>
> **Mr. Bervar:** I'm going to object. Post arrest silence.

**Mr. Kubo:** *Jenkins v. Arkansas* (sic), Your Honor.

**The Court:** Well, Mr. Kubo, I'd like to tell you that I know what *Jenkins v. Arkansas* is off the top of my head, but I'm going to confess to you that I don't.

**Mr. Kubo:** *Jenkins v. Arkansas* carved out the exception to *Doyle v. Ohio.*

**The Court:** All right. That case I'm aware of.

**Mr. Kubo:** And the point of *Jenkins v. Arkansas* is this post-arrest but pre-Mirandized—

**The Court:** All right. I'm familiar with that. All right. The objection is overruled.

**Mr. Kubo:** So there was no contesting by either defendant. Not even you as parents, when you have said, Johnny did you eat that extra cookie? No, mom. No, it wasn't me. You know how we all act when we're accused of something? There's nothing here.

■ The government argues that these comments were permissible because they clearly refer to that stage of the investigation concerning appellants' post-arrest but pre-*Miranda* silence. Even if counsel for the government intended his comments to refer only to post-arrest/pre-*Miranda* silence, the actual language used contains no such limitation and it is highly doubtful that the jury understood any such limitation. The government suggests that because it argued to the court that its comments were addressing post-arrest/pre-*Miranda* silence, it was clear that the jury understood the limitation. We are not persuaded that the government's cryptic argument to the court helped the jury. Without an explanation of *Miranda* and a limiting instruction from the court, there is no reason to believe the jury understood the narrow grounds on which counsel's statements may have been permissible.

■ We find our decision in *Negrete–Gonzales* particularly on point. There, we ex-

---

4. Baker additionally argues that during closing rebuttal argument, the government impermissibly commented on his exercise of his Fifth Amendment rights. We do not reach this alternative argument because we find that the government's closing argument violated his due process rights as enunciated by the Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

plained: "On appeal, counsel insisted that 'in his own mind' he was asking only about pre-*Miranda* silence. We decline the government's invitation to allow subjective intent to rescue obviously impermissible questioning. To hold otherwise would render meaningless the rule of *Doyle* and *Fletcher*." 966 F.2d at 1281. Similarly here, counsel's subjective intent cannot save his overly broad statements. The government's rebuttal argument broadly condemns appellants' silence: pre-*Miranda* and post-*Miranda*. This sweeping closing argument violated Baker's due process rights as enunciated in *Doyle* and clarified by this court in *Negrete–Gonzales*.[5] Moreover, the district court *overruled* defense counsel's objection and did not give the jury a limiting instruction which might have avoided a constitutional violation. *Cf. Greer v. Miller*, 483 U.S. 756, 764, 107 S.Ct. 3102, 3108, 97 L.Ed.2d 618 (1987) (improper question about defendant's post-arrest silence not reversible error where court sustained objection to question and advised jury to disregard it).

### B. *Harmless Error*

▮ The government argues that even if there were error, it was harmless beyond a reasonable doubt. This past term, the Supreme Court explained that "*Doyle* error fits squarely into the category of constitutional violations which we have characterized as 'trial error.'" *Brecht*, —— U.S. at ——, 113 S.Ct. at 1717. On direct review, the Court "applie[s] the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type." *Id.* To determine whether the prosecutor's conduct in this case was harmless, we consider (1) the extent of the comments made, (2) whether an inference of guilt from silence was stressed to the jury, and (3) the extent of other evidence suggesting the defendant's guilt. *United States v. Foster*, 985 F.2d 466, 468 (9th Cir.1993); *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir.1991).

The prosecutor's comments in his closing rebuttal argument were extensive and prejudicial. Moreover, the entire purpose of the prosecutor's line of argument was "to suggest to the jury that [the defendant] must have been guilty because an innocent person would not have remained silent." *Newman*, 943 F.2d at 1158. "You know how we all act when we're accused of something? There's nothing here," the prosecutor argued, thereby clearly inferring that appellants would not have remained silent if they were innocent.

As in *Newman*, "[o]ur decision is bolstered by the overall weakness of the government's case." *Id.* No one could identify Baker as the one who committed the offense, and "[t]he evidence of his guilt is all circumstantial." *Id.* Similarly in *Negrete–Gonzales*, this court held that the *Doyle* error present in that case was not harmless beyond a reasonable doubt where "[t]he evidence against the defendants was far from overwhelming." 966 F.2d at 1281. Again, the purely circumstantial evidence against Baker is hardly overwhelming. Even the district court commented on the closeness of the case and the weak nature of the government's evidence.[6]

▮ Because we cannot say that the error was harmless beyond a reasonable doubt, we conclude Baker's conviction must be reversed. Caban did not raise the issue on appeal. Nevertheless, we have held that "it is 'manifestly unjust' to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants." *Unit-*

---

5. We reject the government's argument that its comments constituted a "fair response" or "invited error." The government suggests that the defendants opened the door to the government's comments when, in closing argument, defense counsel argued that Baker's statement to the police, "How did you guys find out?," did not necessarily refer to the bank robbery, but may have instead referred to where he was staying (the Driftwood Hotel) or some other less-incriminating subject. The government's comments in rebuttal are far broader than a mere response to the defense's argument.

6. The district court stated:

   I'll be candid. This court has seen stronger bank robbery cases.... The simple fact of the matter is there was no positive identification in this case; and the evidence was circumstantial; and there was (sic) some identification problems here.... It simply boiled down to a question of credibility in weighing the evidence...."

*ed States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992); *see also United States v. Olano,* 934 F.2d 1425, 1439 (9th Cir.1991) ("We believe it would be manifestly unjust to reverse [one co-defendant's] conviction and not [the other's] when both suffered the same prejudice from the same fundamental error in the same trial."), *rev'd on other grounds,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As in *Ullah,* the issue not raised by Caban was properly raised and argued by co-defendant Baker, and "the government suffered no prejudice as a result of [the co-defendant's] failure to raise the issue." 976 F.2d at 514. We are compelled to reverse Caban's conviction because the government's improper closing rebuttal argument violated his due process rights as well. Caban suffered the same prejudice from the same fundamental trial error.

We therefore REVERSE and REMAND for a new trial as to both Baker and Caban.