**The PEOPLE OF the TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Cesar Celestian VELORIA, Defendant–Appellant.**

**No. 97–10201.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1997.

Decided Feb. 13, 1998.

Howard Trapp, Howard Trapp Inc., Agana, Guam, for defendant-appellant.

David M. Moore, Assistant Attorney General, Agana, Guam, for plaintiff-appellee.

Before: REINHARDT, LEAVY, and THOMAS, Circuit Judges.

LEAVY, Senior Circuit Judge:

Cesar Veloria was convicted in the Superior Court of Guam of first degree criminal sexual conduct, second degree criminal sexual conduct, and child abuse. Veloria contends that the prosecutor improperly elicited testimony regarding his invocation of his right to remain silent after being arrested and advised of his constitutional rights. We hold that the violation constitutes plain error which requires a new trial.

*Facts and Procedural Proceedings*

Defendant Cesar Veloria lived with his parents in a rural area of Guam. Maria Massey, his girlfriend, moved into the Veloria household in July 1993. At that time, Maria Massey had an infant daughter. Maria Massey was not divorced from her first husband. In January 1995, Maria Massey had a son by Veloria. Veloria worked as a mechanic and Maria Massey stayed at home with the two children.

On June 23, 1995, Veloria and Maria Massey had an argument at home. Veloria had been drinking after work and had come home late. The argument led to violence and Ma-

ria Massey called the police, who took both Veloria and Massey to the police station. No charges were filed, and Veloria was released after several hours.

On November 12, 1995, Veloria and Maria Massey had another argument at home. Veloria told her to leave the house. The next day, November 13, Veloria's father drove Maria Massey and the two children to the public health offices. Massey and the children met with a social worker from Child Protective Services. The following day, November 14, Maria Massey's three-year old daughter was examined at a rape crisis center. The examining doctor concluded that the girl had vaginal injuries consistent with sexual penetration that probably had occurred from one to three months earlier. Maria Massey and the children moved into a women's shelter and later into subsidized housing.

The public health offices contacted the Guam police department. Veloria was charged with first and second degree criminal sexual conduct and child abuse. After a trial by jury in February 1996, Veloria was found guilty on all three charges. He timely appealed to the Appellate Division of the District Court of Guam, which affirmed the convictions. Veloria timely appealed to this court. We have jurisdiction pursuant to 48 U.S.C. § 1424–3(c).

### Discussion

The government presented convincing evidence, through the testimony of Dr. Heather Edgeley, the examining physician, that the three-year old child had suffered injuries to her vaginal area which were consistent with sexual assault. The victim and only eyewitness to the crimes was unable to testify. *Cf. Tome v. United States,* 513 U.S. 150, 166, 115 S.Ct. 696, 705, 130 L.Ed.2d 574 (1995). The evidence as to the perpetrator was circumstantial and required the jury to weigh the credibility of the mother against the defendant.

Maria Massey testified that on October 9, 1995, Veloria left the home with the girl to go on an errand. When Veloria returned two hours later, Massey noticed that the girl had been crying, appeared frightened, and had difficulty walking. At bedtime, the girl complained, "Mommy, hurt." Massey examined her daughter and noticed that her vagina looked bigger and swollen. Massey testified that the following day she found Veloria attempting to hide the girl's blanket which was stained with two drops of blood. She testified that on October 12, Veloria told her not to call the police and to wash the blanket. The daughter continued to experience pain in walking, difficulty in urination, and discharge from her vagina. Massey testified that she never drove the car and that Veloria was the only man who had access to her daughter. She testified that she did not report her suspicions of sexual assault for over a month because she was afraid of Veloria.

Veloria testified that he did not have access to his truck on the day in question and that Maria Massey often drove various cars for the family members, although she did not have a driver's license. Veloria called several witnesses to testify in his defense that he did not have access to his truck on October 9, and would not have molested the girl.

The government, in its case-in-chief, presented the testimony of Guam police officer Timothy Santos, who arrested Veloria on the evening of November 17. Before the officer took the stand, the defendant's attorney questioned the purpose of his testimony, stating:

> Your Honor, can we have an offer of proof as to what he's going to say? He's [the] arresting officer. So my client got arrested. What's that got to do with anything? He didn't say anything that is going to help the Government's case, did he?

The transcript at this point states "indiscernible-inaudible," and states that the side bar conference was concluded. The parties made no effort to correct the record. *See* Fed. R.App. P. 10(e). From this incomplete record, we cannot determine whether an objection was made and overruled. The police officer testified as follows:

> Q [The Prosecution] Sir, how long have you been with GPD [Guam Police Department]?
>
> A Approximately 12 years.

Q   And what section of GPD were you assigned to?

A   Dededo Precinct Command.

Q   And, sir, turning your attention to November of last year, November 17, 1995, did you participate in the arrest of Cesar Veloria?

A   Yes, sir, I did.

Q   All right.   How did you happen to get assigned to that particular case?

A   Well, I was at the Dededo Police Station at the time when I was approached by Maria Massey.   At that time she had stated she needed to pick up some clothing, some belongings for her and her three-year-old child at the residence of Cesar Veloria.

Q   All right.   And as a result of that conversations with Ms. Massey, what did you do?

A   I escorted her up to the residence of Mr. Cesar Veloria.

Q   And where was that residence located?

A   That was in Pagat–Mangilao, it's off Pump Station Road.

Q   And approximately what time of day was this?

A   This was on the evening hours, night hours, roughly about 11:00 p.m.

Q   And when you got to the residence there in Mangilao, what did you do?

A   I effectuated an arrest on Mr. Veloria.

Q   All right.   Did you speak to him at all when you got to the residence?

A   Yes, sir, I did.

Q   And what did you tell him?

A   I basically advised him of the allegations of criminal sexual conduct.   I identified myself and requested his presence at the Dededo Police Station for further investigation.

Q   And did he come to the Dededo Precinct?

A   Yes, sir; he did.

Q   All right.   How did he get to the Dededo Precinct?

A   He was transported by a police cruiser.

Q   And who was driving that police cruiser?

A   That should have been Officer J. San Nicolas.

Q   All right.   And is he another Guam Police Officer?

A   Yes, sir.

Q   Now, what happened when Cesar Veloria got to Dededo Precinct?

A   When he got to the precinct, I advised him of his Constitutional Rights by use of a GPD rights form.

Q   And after that, what happened?

A   He chose not to waive his rights and requested for legal counsel.

Q   And that is his Constitutional Right; is that right?

A   That is correct.

Q   All right.   So what did you do at that point, if anything?

A   At that point, I ceased all questioning, and I went ahead and informed him that he was placed under arrest for criminal sexual conduct.

Q   And was he booked that evening?

A   Yes, sir.

Q   And was he confined that evening?

A   Yes, sir.

Q   All right.   And where was that?

A   Territorial Detention Facility.

Q   All right.   And all these events occurred on November 17th of 1995?

A   From the 17th and continued on to the 18th, on this arrest, the arrest portion.

Q   And what time did the arrest take place?

A   12:06.

Q   Is that A.M. or P.M.?

A   A.M., on the 18th of November.

MR. GIBBS: All right.   I have nothing further.   Thank you, Officer.

■   There was no objection to the officer's testimony, no motion to strike, and no ruling. Nevertheless, plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.   8 Guam Code Ann.

§ 130.50(b); Fed.R.Crim.P. 52(b); *United States v. Perez,* 116 F.3d 840, 846 (9th Cir. 1997) (en banc).

■ Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. *Johnson v. United States,* —— U.S. ——, ——, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (applying Rule 52(b) as outlined in *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993)). If these three conditions are met, an appellate court may then exercise its discretion to notice an error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549.

■ The prosecutor impermissibly elicited testimony about Veloria's post-arrest silence. *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *United States v. Newman,* 943 F.2d 1155, 1157 (1991). The Fifth Amendment's protection from being required to give incriminating testimony prevents the prosecutor from commenting or relying at trial upon the post-arrest silence of the defendant. The right to remain silent carries an implicit assurance that silence will carry no penalty. *Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245; *United States v. Foster,* 985 F.2d 466, 468 (9th Cir.1993).

■ If an error is "clear" or "obvious," it is plain. *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78. Because the *Doyle* rule prohibiting testimony regarding post-arrest silence has been well-established in the law, the prosecutor's deviation from the rule should have been obvious to the prosecutor, the defense, and the trial court.

■ To affect substantial rights, the error must have been prejudicial enough to affect the outcome of the proceedings. *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78. Although the government has conceded that the prosecutor's questioning improperly drew attention to Veloria's post-arrest silence, the government contends that this error was not prejudicial. We disagree.

■ When deciding whether a prosecutor's reference to a defendant's post-arrest silence was prejudicial, this court will consider the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt. *United States v. Newman,* 943 F.2d at 1158.

The government characterizes the improper questioning as "one relatively innocuous question." Although the officer made only one reference to the defendant's post-arrest silence, the officer's entire testimony contained no substantive information for the jury. In fact, it is difficult to determine why the government put this officer on the stand. The officer's testimony regarding the post-arrest silence cannot, in this context, be characterized as innocuous.

The government contends that the prosecutor made no further reference to Veloria's post-arrest silence, therefore this case can be distinguished from those cases where the prosecutor's comments were more frequent or egregious. *See United States v. Kallin,* 50 F.3d 689, 694 (9th Cir.1993) and cases cited therein. However, in this case, the officer's testimony consisted of little else, and the jury was never cautioned or instructed to disregard his testimony regarding the defendant's post-arrest silence. *Cf. United States v. Newman,* 943 F.2d at 1156–57 (*Doyle* violation found even though jury was cautioned). Additionally, the trial court further brought the jury's attention to the officer's testimony when the jury was instructed that, "It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves."

The final factor that we consider when determining whether the reference to the post-arrest silence was prejudicial is the extent of other evidence suggesting the defendant's guilt. In this case, the evidence that the child was sexually molested was strong and distressing. However, the evidence that the defendant committed this crime was simply a question of credibility—the defendant's word against that of his former girlfriend,

who reported the crime at least a month after it occurred but within days of being thrown out of the Veloria household. The only evidence other that her testimony that implicated Veloria was the officer's testimony regarding Veloria's post-arrest silence. Considering all factors, the improper reference to the defendant's silence was prejudicial enough to affect the outcome of the proceedings. *See United States v. Newman,* 943 F.2d at 1158.

Once the three elements of the plain error inquiries are satisfied, this court may then exercise its discretion to notice the error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549. This court has declined to exercise its discretion to reverse a conviction when the evidence against a defendant is "strong and convincing." *United States v. Perez,* 116 F.3d at 848. The evidence linking the defendant to the crime, as discussed above, is not strong. Furthermore, we are concerned about the prosecutor's lack of self-restraint in the face of clearly announced rules of constitutional protection. This conduct is indefensible, and the prosecutor should have been the first one in the courtroom to know it. In fact, in *Miranda v. Arizona,* 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1624–25, n. 37, 16 L.Ed.2d 694 (1966), the court stated:

> In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.

*See United States v. Wycoff,* 545 F.2d 679, 681 (9th Cir.1976). Such an error, when left unchallenged by the defense counsel and the court, seriously affects the integrity and public reputation of the judicial proceeding. In this case, the conviction should not stand. *See United States v. Kallin,* 50 F.3d at 695.

We REVERSE and REMAND for a new trial.