UNITED STATES of America, Plaintiff–Appellee,

v.

Timothy James WHITEHEAD, Defendant–Appellant.

No. 99–50200.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 1999.

Decided Jan. 11, 2000.

Joseph J. Burghardt, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

John H. Gomez, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: THOMAS, SILVERMAN, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Timothy James Whitehead ("Whitehead") seeks reversal of his jury conviction for importation of marijuana, see 21 U.S.C. §§ 952, 960 (1994), and importation of marijuana with intent to distribute, see id. § 841(a)(1), on the ground that the government infringed upon his Fifth Amendment right to remain silent. In particular, Whitehead contends that the district court erred in admitting evidence of his post-arrest, pre-*Miranda* silence during the government's case-in-chief, and that it further erred when it permitted the prosecutor to comment on this silence during closing argument. Whitehead also argues that the district court erred in failing to grant use immunity to his brother, proposed defense witness Jason Whitehead, and that the district court lacked jurisdiction because the 28 U.S.C. § 546(d) appointment of the United States Attorney for the Southern District of California violated the Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

On June 8, 1998, at approximately 11:45 p.m., Whitehead attempted to enter the United States from Mexico at the Calexico, California Port of Entry. He drove a red 1988 Hyundai Excel to the border, and his 17–year–old brother Jason was his only passenger. Whitehead responded to questions from government officials at primary inspection and again at secondary inspection; however, after he was placed in custody, and before he received warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Whitehead remained silent.

As Whitehead drove up to primary inspection, INS Inspector Sean Hildenbrand noticed that "there was nothing in [Whitehead's car]. There was no clothing, soda can, et cetera. There wasn't any garbage or anything laying in the vehicle." When Whitehead complied with a request that he open the car's trunk, Inspector Hildenbrand discovered that it too was empty. Inspector Hildenbrand found it unusual that both the interior and trunk of Whitehead's vehicle were empty. Moreover, Whitehead appeared nervous, and when asked, Whitehead stated that he did not know who owned the Hyundai. Based on these factors, Inspector Hildenbrand referred Whitehead to the secondary inspection lot.

■ At secondary inspection, a narcotics-detector dog screened Whitehead's car and alerted to the rear of the vehicle. United States Customs Service Inspector Robert Garcia and another official then escorted Whitehead and his brother to the secondary office, placing the two in custody for the purposes of *Miranda*.[1] Once

---

1. In its brief, the government "concedes that Whitehead was in custody for *Miranda* pur- poses both at the time Inspector Garcia escorted him to the secondary inspection office,

inside the office, Inspector Garcia frisked Whitehead and searched his wallet and shoes, but he did not find anything unusual. During this time, Whitehead did not speak.

Inspector Garcia next searched the Hyundai. Underneath the rear bumper, he found several brick-shaped packages wrapped in cellophane, and inside these packages, he discovered a green, leafy substance that field-tested positive for marijuana. Inspector Garcia immediately returned to the secondary office, had Whitehead and his brother remove their shoes and belts, and placed the two men in separate holding cells. Whitehead continued to remain silent.

Inspector Garcia then completed his search of Whitehead's vehicle, finding fifteen cellophane-wrapped packages concealed in the front and rear bumpers and rear doors. These packages contained 54.85 pounds of marijuana.

On July 8, 1988, the United States filed a two-count indictment against Whitehead in the Southern District of California. Count One charged importation of marijuana, in violation of 21 U.S.C. §§ 952, 960. Count Two charged possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

During trial, Whitehead subpoenaed his brother Jason to testify. After Jason first invoked his Fifth Amendment right not to testify, Whitehead requested that the district court order the government to grant use immunity to Jason. The district court refused, and the government declined to provide immunity voluntarily. The following day, Jason Whitehead changed his mind and indicated to the district court that he was willing to testify. After taking the witness stand and answering several questions, however, Jason again invoked the Fifth Amendment. On the government's motion, the district court struck

and later, when Inspector Garcia placed him in the holding cell." The government also acknowledges that Whitehead had not yet re-

Jason Whitehead's entire testimony from the record.

A jury found Whitehead guilty on both counts of the indictment, and the district court sentenced him to thirteen months in custody, ordered him to serve three years of supervised release, and required him to pay a $200.00 penalty assessment. This appeal followed.

## II.

As noted above, it is undisputed that after he was taken into custody for the purposes of *Miranda*, but before he was read the *Miranda* warnings, Whitehead exercised his right to remain silent. Whitehead argues that the district court erred by admitting evidence of that silence during the government's case-in-chief. The prosecutor solicited the following testimony from Inspector Garcia:

Q. Now, during that time that you physically escorted the defendant to the holding cell and frisked him down, searched his wallet, took off his shoes and searched them, did the defendant ever ask you what was going on?

A. No.

Q. Did the defendant 'ever ask you what was the matter?

A. No.

Q. Did he ever ask you what you found in the car?

A. No.

. . . .

Q. So you go in, take off their shoes, take off their belts, and put them both in holding cell[s]?

A. Yes.

Q. At that point, did they ask you what's going on?

A. No.

Q. Did they ask you what you found in the car?

ceived *Miranda* warnings at either of these times.

A. No.

Q. Did they ask you why they were being arrested?

A. No.

During closing, the prosecutor argued to the jury that Whitehead remained silent because he knew he was guilty:

> And then what do they do? Inspector Garcia leads him in there, pats him down—you know, T.V.—takes off his shoes and his belt and puts him in a cell.
>
> What do you do at that point? What do I do? What would anyone of us do? What is going on here? What the heck is going on? Why I am being treated like this? Why am I being arrested? But you don't say that, if you know; and the defendant didn't say a word because he knew. He knew there were drugs in the car.

■ We must review Whitehead's claim that this use of his silence was in error under the plain-error standard, because he did not properly object in the district court. *See United States v. Plunk*, 153 F.3d 1011, 1019 (9th Cir.), *amended by* 161 F.3d 1195 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1376, 143 L.Ed.2d 535 (1999); *United States v. Thompson*, 82 F.3d 849, 854–55 (9th Cir.1996); *see also* Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b). Nor did Whitehead preserve this objection through his pretrial motion in limine to suppress statements, because that motion challenged only "his *statements* given to Customs Inspector Garcia in the secondary inspection area," (emphasis added), and not the evidence at issue in this appeal: his silence while being escorted to the secondary office and being placed in a holding cell.

■ Under the plain-error standard, [T]here must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

*Plunk*, 153 F.3d at 1019 (quoting *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations and internal quotation marks omitted))) (alterations in original). Although we find that the district court committed "error" that is "plain," we cannot conclude that the error affected Whitehead's substantial rights.

■ In *Douglas v. Cupp*, 578 F.2d 266 (9th Cir.1978), we held that "the fact of silence in the face of arrest" without reference to *Miranda* warnings could not be used as substantive evidence of guilt, because that would "act[ ] as an impermissible penalty on the exercise of the ... right to remain silent." *Id.* at 267. Although it was not clear in *Douglas* whether the silence that was erroneously admitted into evidence was pre or post-*Miranda*, *Douglas*'s import was plain: regardless whether the *Miranda* warnings were actually given, comment on the defendant's exercise of his right to remain silent was unconstitutional. *See id.; accord United States v. Moore*, 104 F.3d 377, 384–89 (D.C.Cir.1997) (holding that the government may not use a defendant's post-arrest, pre-*Miranda* silence against him as evidence of his guilt); *United States v. Hernandez*, 948 F.2d 316, 322–24 (7th Cir. 1991) (same); *see also Mitchell v. United States*, 526 U.S. 314, ——, 119 S.Ct. 1307, 1319 n. 2, 143 L.Ed.2d 424 (1999) (Scalia, J., dissenting) (noting that the Supreme Court "did say in *Miranda v. Arizona* that a defendant's postarrest silence could not be introduced as substantive evidence against him at trial" (citation omitted)); *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("The prosecution may not ... use at trial the fact that [a defendant] stood mute or claimed his [Fifth Amendment] privilege [against self-incrimination] in the face of accusation."); *cf. Bradford v. Stone*, 594

F.2d 1294, 1295–96 (9th Cir.1979) (per curiam) (citing *Douglas,* 578 F.2d at 267, as a post-arrest, pre-*Miranda* case). *But see United States v. Rivera,* 944 F.2d 1563, 1568 (11th Cir.1991) (stating that "the government may comment on a defendant's silence when it occurs after arrest, but before *Miranda* warnings are given").

*United States v. Oplinger,* 150 F.3d 1061 (9th Cir.1998), and *United States v. Baker,* 999 F.2d 412 (9th Cir.1993), do not dictate a contrary result. In *Oplinger,* we held that the government's use of a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt "did not offend [the defendant's] privilege against self-incrimination ... or his right to due process." *Oplinger,* 150 F.3d at 1067. We strictly limited our ruling in *Oplinger* to the period "[p]rior to custody," *id.,* "[w]hen a citizen is under no official compulsion whatever, either to speak or to remain silent," *id.* at 1066 (quoting *Jenkins v. Anderson,* 447 U.S. 231, 243–44, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (Stevens, J., concurring in the judgment)) (internal quotation marks omitted). Thus, *Oplinger* neither controls this case nor conflicts with our holding in *Douglas.*

In *Baker,* we held that a prosecution closing argument that "broadly condemn[ed] appellants' silence: pre-*Miranda* and post-*Miranda*" violated due process. *Baker,* 999 F.2d at 416. We also speculated in dicta that an argument commenting more narrowly on a defendant's post-arrest but pre-*Miranda* silence "may have been permissible." *Id.* at 415. The *Baker* court did not cite *Douglas,* however, and, in light of *Douglas,* this dictum did not comport with controlling Ninth Circuit law. Under that law, the government's comment on Whitehead's exercise of his right to remain silent violated the Fifth Amendment. *See Douglas,* 578 F.2d at 267.

In sum, when the district court admitted evidence of Whitehead's post-arrest, pre-*Miranda* silence, and when it allowed the government to comment on this silence in closing argument, it plainly infringed upon Whitehead's privilege against self-incrimination. *See id.* Accordingly, we find that the first two requirements of the plain-error standard were met in this case.

Nonetheless, we do not reverse, because Whitehead has failed to meet his burden of showing that the error "affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. "When deciding whether a prosecutor's reference to a defendant's post-arrest silence was prejudicial, this court will consider the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt." *Guam v. Veloria,* 136 F.3d 648, 652 (9th Cir.1998).

Inspector Garcia's comments on the witness stand regarding Whitehead's post-arrest, pre-*Miranda* silence were scant. Further, unlike the officer in *Veloria, see id.,* Inspector Garcia testified on a variety of other matters probative of Whitehead's guilt, notably the discovery of the marijuana. Thus, in context, the reference was incidental. Moreover, three other government witnesses took the stand, and none of them testified about Whitehead's silence.

The prosecutor's reference in closing argument was not so innocuous and cannot be condoned. There is simply no question that "an inference of guilt from silence was stressed to the jury," *id.,* in violation of Whitehead's constitutional rights. Thus, this factor weighs in favor of finding prejudice.

Nevertheless, we conclude that the independent, overwhelming physical evidence of Whitehead's guilt is determinative of this case. Whitehead was stopped at the border with 54.85 pounds of marijuana, worth an estimated $35,000, concealed in the front and rear bumpers and rear doors of the vehicle he was driving. Unlike in *Veloria,* where the credibility of the defendant was critical, *see id.* at 652–53, here the physical evidence was virtually conclusive of guilt. Thus, the improper refer-

ences to Whitehead's silence were not "prejudicial enough to affect the outcome of the proceedings." *Id.* at 653.

Therefore, because the plain error in this case did not "affec[t] substantial rights," we "ha[ve] no authority to correct it." *Olano*, 507 U.S. at 741, 113 S.Ct. 1770 (first alteration in original) (internal quotation marks omitted).[2]

### III.

Whitehead also argues that the district court erred in denying his motion to compel the government to grant use immunity to his brother Jason. He further argues that the government's failure to grant use immunity to Jason Whitehead intentionally distorted the fact-finding process.

■ "A criminal defendant is not entitled to compel the government to grant immunity to a witness." *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991). There is, however, "an exception to this rule in cases where the fact-finding process is intentionally distorted by prosecutorial misconduct." *Id.* "In order to make out a claim for prosecutorial misconduct, a defendant must show that the evidence sought from the nonimmunized witness was relevant and that the government distorted the judicial fact-finding process by denying immunity to the potential witness." *Id.* "If a defendant makes an 'unrebutted prima facie showing of prosecutorial misconduct that could have prevented a defense witness from giving relevant testimony,' we will remand the case to the district court to determine at an evidentiary hearing whether the government intentionally distorted the fact-finding process." *Id.* (quoting *United States v. Lord*, 711 F.2d 887, 891 (9th Cir.1983)).

■■ To satisfy the relevance prong, "a defendant need not show that the testimony sought was either 'clearly exculpatory' or 'essential to the defense'; the testimony need be only relevant." *Id.* The testimony of Whitehead's brother meets this minimal requirement. *See* Fed. R.Evid. 401. Indeed, before he invoked the Fifth Amendment and the district court struck his testimony from the record, Whitehead's brother had stated that Whitehead was not "aware of the fact that there was marijuana in the Hyundai that he was driving on the 8th of June." This testimony alone would satisfy the relevance prong.

"The fact-finding process is intentionally distorted where the prosecutor intentionally causes the witness to invoke the Fifth Amendment privilege or 'grant[s] immunity to a witness in order to obtain his testimony, while denying immunity to a defense witness whose testimony would directly contradict that of the government witness.'" *United States v. Duran*, 189 F.3d 1071, 1087 (9th Cir.1999) (quoting *Westerdahl*, 945 F.2d at 1087) (alteration in original) (citation omitted). Neither of these conditions is present in this case. Whitehead does not argue that "the government or its agents took affirmative steps to prevent [his brother, Jason,] from testifying," and nothing in the record would support such a claim. *Westerdahl*, 945 F.2d at 1086. Furthermore, Whitehead does not contend that the government granted immunity to other witnesses while denying immunity to his brother, and nothing in the record would support such an argument.

Accordingly, we find that the district court did not err in refusing to order the government to grant use immunity to Whitehead's brother or in failing to hold an evidentiary hearing on whether the government intentionally distorted the fact-finding process.

---

**2.** Because we have determined that the district court did not commit prejudicial error, "[w]e need not consider whether the error, if prejudicial, would have warranted correction ... as 'seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 741, 113 S.Ct. 1770 (second alteration in original).

## IV.

 Finally, Whitehead argues that the district court lacked jurisdiction over this case because the interim appointment of Charles G. La Bella as U.S. Attorney for the Southern District of California by the judges of the district court pursuant to 28 U.S.C. § 546(d) violated the Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2. We thoroughly considered and rejected this argument in a recent opinion. *See United States v. Gantt*, 194 F.3d 987, 998–1000 (9th Cir.1999).

## V.

For the foregoing reasons, Whitehead's conviction is AFFIRMED.