119 F.3d 8
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse Clarence MILLER, Defendant-Appellant.
 No. 95-50373.
 United States Court of Appeals, Ninth Circuit.
 Argued July 11, 1997.
Submitted July 11, 1997.
Decided July 22, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CR-94-00286-LEW; Laughlin E. Waters, District Judge, Presiding.
 
 
 2
 Before: WILLIAM C. CANBY and SIDNEY R. THOMAS, Circuit Judges, and Samuel P. King,** Senior U.S. District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 J.C. Miller, a former deputy sheriff with the Los Angeles County Sheriff's Department, was indicted and convicted on seven counts relating to the theft of money from currency seizures conducted while he was a member of an elite narcotics unit known as Majors 3. He appeals his conviction for one count under 18 U.S.C. § 371 for conspiracy to steal government property valued at over $5,000, four counts under 18 U.S.C. § 666 for theft of government property valued at over $5,000, and two counts under 26 U.S.C. § 7206(1) for failure to report income on his tax return.
 
 
 5
 We reverse his convictions under 26 U.S.C. § 7206(1) on the basis of the government's concession of error, but affirm the remainder of the convictions. The parties are familiar with the facts of this case and we therefore detail them only as necessary to clarify our reasoning.
 
 I.
 
 6
 As the government properly conceded at oral argument, Miller's convictions for violations of 26 U.S.C. § 7206(1) must be reversed because the district court's jury instruction removed the element of materiality from the jury's consideration. The district court's instruction that "any failure to report income regardless of amount is a material material" was appropriate under the state of law at the time of trial. However, subsequent to the trial, we decided that the question of materiality as the term is used in 26 U.S.C. § 7206(1) belongs to the jury. United States v. Uchimura, 107 F.3d 1321, 1324 (9th Cir.1997). Miller is entitled to the law as it stands at the time of his appeal. Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (a new rule of criminal prosecution is to be applied retroactively to all cases, state and federal, pending on direct review and not yet final, even when the new rule represents a "clean break" with the past). Thus, Miller's conviction on two counts of violating 26 U.S.C. § 7206(1) must be reversed.
 
 II.
 
 7
 We find the evidence sufficient to sustain Miller's conviction for conspiracy. In examining sufficiency of the evidence, we must determine "whether any rational trier of fact could have found the essential elements of the crime to have been met beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The evidence must be viewed in the light most favorable to the prosecution. Id. The government is entitled to all reasonable inferences that may be drawn from the evidence. United States v. Vaughn, 797 F.2d 1485, 1489 (9th Cir.1986).
 
 
 8
 This is a difficult standard to satisfy and Miller does not do so in this case. A conspiracy conviction requires "1) an agreement to accomplish an illegal objective, 2) coupled with one or more acts in furtherance of the illegal purpose, and 3) the requisite intent necessary to commit the underlying substantive offense." United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987).
 
 
 9
 The government is not required to prove the existence of a formal agreement among co-conspirators. United States v. Camacho, 528 F.2d 464, 469 (9th Cir.1976). An agreement may be inferred from circumstantial evidence, as well as the facts and circumstances of each case. Iannelli v. United States, 420 U.S. 770, 778, fn 10 (1975); United States v. Foster, 985 F.2d 466, 469 (9th Cir.), amended 995 F.2d 882 (1993), amended, 17 F.3d 1256 (1994). The evidence need only show a tacit understanding between the members of Majors 3; they need only to have been aware of each other's participation, recognizing that the success of the conspiracy depended on the success of each member playing his part in furthering and concealing the criminal scheme. "For the convictions to stand, the government must produce enough evidence to show that each defendant knew or had reason to know the scope of the (criminal enterprise), and had reason to believe that their own benefits derived from the operation were dependent upon the success of the entire venture." United States v. Perry, 550 F.2d 524, 528-29 (9th Cir.1977). In addition, the prosecution is allowed to rely on inferences drawn from the conduct of the alleged conspirators. United States v. Clevenger, 733 F.2d 1356, 1358 (9th Cir.1984).
 
 
 10
 All members of the Majors 3 investigation team were involved in currency thefts, with the exception of a late-joining member who did not become a part of the unit until the summer of 1989. The testimony of several of the deputies established that the unit worked together very closely, regularly stole monies in front of one another, and divided up the proceeds. There was clear evidence that Miller was a part of this unit and considered by other members to be a willing accomplice in the thefts. In addition, there was evidence that Miller was aware of other thefts by Majors 3 team members, including times when those deputies chose not to share the proceeds with other members of the unit. The record indicates that Miller and other members of Majors 3 would periodically discuss the currency thefts, including whether to steal money on a particular case, how much was stolen, how it was to be distributed, and who had or would receive some portion of the stolen money. Miller clearly joined the conspiracy with the requisite mental intent as soon as he became aware that money was being stolen by his colleagues and began to participate in the thefts. He received stolen money in nine specific cases. Despite Miller's argument that there was no advance planning to any of the thefts, and therefore no conspiracy, a reasonable jury could find that these facts were sufficient to prove the offense.
 
 III.
 
 11
 We also find the government's evidence concerning the theft offenses sufficient to withstand appellate scrutiny. Miller was charged and convicted of four counts of theft under § 666, relating specifically to the Lenoir, Quijano, Ogunmowo, and Fuentes cases. His liability rests both on his role as a co-conspirator and his aiding and abetting his co-conspirators in these particular thefts. Deputy Hurado testified that Miller received a distribution of several thousand dollars in stolen currency related to the Lenoir investigation, a distribution of between $8,000 and $10,000 of stolen currency in the Quijano investigation and a distribution of stolen currency from the Fuentes investigation. Deputy Clark testified he distributed between $1,000 and $2,000 to Miller in stolen currency from the Ogunmowo investigation. Taking this evidence and the other evidence produced at trial in the light most favorable to the prosecution, a rational juror could have found the essential elements under 18 U.S.C. § 666 to have been met beyond a reasonable doubt.
 
 
 12
 Miller claims for the first time on appeal that his conviction under 18 U.S.C. § 666 cannot stand because the money he received was not under the care or custody of the Los Angeles County Sheriffs Department at the time that he received it. He argues that the money "once stolen, became the property of the stealing deputy."
 
 
 13
 There is no doubt that the money was in control of the Los Angeles Sheriffs Department when it was first stolen by any of the deputies. See United States v. Nichols, 40 F.3d 999 (9th Cir.1994) (money stolen by deputies was under control of the Los Angeles Sheriff's Department despite the fact that the Department was holding it for the benefit of the United States). Miller received the money knowing it had been stolen from the custody of the Los Angeles Sheriff's Department. Section 666 applies to a person who "steals ... or otherwise without authority knowingly converts to the use of any person other than the rightful owner " any property of the requisite value. 18 U.S.C. § 666 (emphasis added). A rational jury could have found beyond a reasonable doubt that Miller converted (or aided in converting) the money to his own use, knowing that he was not the rightful owner.
 
 IV.
 
 14
 Although not addressed at oral argument, Miller contended in his briefs that the trial court improperly admitted evidence concerning Miller's girlfriend, Liz Anderson. We find no error in the trial court's rulings on this issue. Evidence of large sums of money, corresponding in time with the thefts of Majors 3, being held by someone in a close and personal relationship with Miller does make it more likely than not that he was receiving stolen money. It was not an abuse of discretion for the trial court to admit this kind of evidence and then allow the jury to perform its exclusive function of weighing the credibility of the witnesses, resolving the evidentiary conflicts, and drawing any reasonable inferences from the proven facts. United States v. Young, 573 F.2d 1137, 1139 (9th Cir.1978).
 
 
 15
 Defendant's objections as to the admission of gambling documents from a Las Vegas casino were waived for lack of objection at the time the evidence was offered. Marbled Murrelet v. Babbitt, 83 F.3d 1060, 1066 (9th Cir.1996), cert. denied, 117 S.Ct. 942 (1997).
 
 V.
 
 16
 The district court did not err in its application of the Sentencing Guidelines to this case. First, the district court is required to determine the level of loss on the basis of all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 2B1.1 (1987). Thus, the court had to determine the amount of money stolen by all Majors 3 deputies during the course of the conspiracy of which Miller was a part. We find no error in the trial court's adoption of the conclusions of the government, finding a theft total resulting from the conspiracy and all of the specific documented thefts of $526,400.
 
 
 17
 Second, we find no error in the district court's entry of a two level adjustment for "more than minimal planning" by the defendant pursuant to § 2B1.1(b)(4). " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1 (n.1(f)). The Guidelines also provide that an offense involves more than minimal planning if "significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1 (n.1 (f)). The record supported this finding. The Majors 3 deputies testified as to the cooperation of all Majors 3 deputies necessary to commit the thefts, the coordination that took place regarding when and how to steal and distribute the stolen money, and the various post-theft cover-ups--including lying on police reports and lying to investigators who interviewed the deputies about theft allegations.
 
 
 18
 Third, we find no error in the district court's refusal to grant a downward departure because the defendant was allegedly only a minor participant. Whether a defendant had a minor or minimal role is heavily dependent on the facts. We review the trial court's finding for clear error. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989). Although Miller argues he was less culpable than other defendants, this is not dispositive. "[T]he district court is not compelled to determine whether a defendant was or was not the least culpable participant in determining whether the defendant's role was minor." United States v. Rexford, 903 F.2d 1280, 1282 (9th Cir.1990). The trial court found Miller to have engaged in a knowing pattern of conduct, as "deeply involved as the opportunity permitted." The Presentence Report noted Miller's criminal activity spanned from the first theft alleged in the conspiracy count through the last. Of the seventeen cases identified as involving theft from Majors 3 deputies, Miller either stole or received stolen money from eleven of them. In relation to his colleagues on Majors 3, Miller enjoyed the benefits of the conspiracy and the thefts as much, if not more, than several of them. In light of this evidence, the trial court's refusal to reduce Miller's offense level by two points for being a minor participant was not clearly erroneous.
 
 CONCLUSION
 
 19
 For all of the foregoing reasons, Miller's convictions under 18 U.S.C. § 371 and 18 U.S.C. § 666 are AFFIRMED. Miller's convictions pursuant to 26 U.S.C. § 7206(1) are REVERSED. Because Miller's sentences on the tax counts were concurrent with his sentences on the other counts, and because the record indicates that the tax counts did not enhance the sentences on the other counts, there is no need to remand for resentencing. See United States v. Baker, 10 F.3d 1374, 1421 (9th Cir.1993).
 
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3