**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey L. FOSTER and Karla Foster,
Defendants–Appellants.**

**Nos. 91–50639, 91–50645.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1992.

Decided Feb. 3, 1993.

Carolyn Chapman, The Koll Center, San Diego, CA, for defendant-appellant, Jeffrey Foster.

David H. Bartick and Jan Edward Ronis, Ronis & Ronis, San Diego, CA, for defendant-appellant, Karla Foster.

Randy K. Jones, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: BROWNING, SCHROEDER and FLETCHER, Circuit Judges.

SCHROEDER, Circuit Judge:

Karla Foster and Jeff Foster appeal their convictions in a jury trial for drug violations. Each appellant was convicted of one count of conspiracy to manufacture and to possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Karla Foster was convicted of one count of distribution of methamphetamine in violation of § 841(a)(1), and Jeff Foster was convicted of a different count of distribution.

The prosecution arose out of the United States government's sting operation at the Triple Neck Scientific Laboratory, a privately owned chemical company in San Diego, California. Both appellants have attacked the operation as constituting outrageous government conduct in violation of their due process rights, but this court has already upheld the validity of this sting operation. *United States v. Allen,* 955 F.2d 630 (9th Cir.1992).

Of the appellants' remaining contentions, by far the most serious is Karla Foster's claim that her convictions must be reversed because the prosecutor violated her Fifth Amendment rights during her cross-examination. The prosecutor directly questioned her concerning her post-arrest silence in contravention of the standard laid down by the Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Karla Foster contends that this violation constituted prejudicial error, and we agree.

Karla Foster's defense at trial was that she had gone to the laboratory after being approached by two men who asked her to inquire about the legal purchase of chemicals. She maintained that she had continued to purchase chemicals because those men threatened her and her children.

During Karla's cross-examination, the prosecutor questioned her concerning whether she had reported the threats and her fears to the police. That questioning exceeded the bounds of proper cross-examination when the prosecutor asked whether she had told the police about the threats when she was arrested. Despite a timely defense objection, the district court at this

time instructed Karla to answer the question; this was error.[1] A later reference to her post-arrest silence was made during closing argument; the district court at that time properly instructed the jury to disregard it. The prosecutor's earlier questioning about the post-arrest silence, and the defendant's incriminating response, however, remained before the jury.

The Fifth Amendment protects a criminal defendant from being required to give incriminating testimony. The Supreme Court in *Doyle v. Ohio* squarely held that this protection prevents the prosecutor from commenting or relying at trial upon the post-arrest silence of the defendant, since the right to remain silent carries an "implicit" assurance that "silence will carry no penalty." 426 U.S. at 618, 96 S.Ct. at 2245.

The Supreme Court has subsequently held in *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), that there is no *Doyle* violation if the district court promptly sustains a timely objection to a question concerning post-arrest silence, instructs the jury to disregard the question, and gives a curative jury instruction.

None of this was done in this case. The court overruled a timely objection, advised the defendant to answer the question and admitted her testimony acknowledging post-arrest silence. The error here is more serious than in *United States v. Newman*, 943 F.2d 1155, 1157–58 (9th Cir.1991), where we followed the *Greer* standard and found a *Doyle* violation even though the judge instructed the jury to disregard the testimony. We reversed because the jury was permitted to hear the witness' answer to the improper question. "There were questions *and* answers that focused on Newman's silence." *Id.*

 A violation of *Doyle* is subject to harmless error analysis, *id.* at 1158, and thus the government here asks us to hold that this violation was harmless. We determine whether the prosecutor's conduct was harmless by considering "the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt." *Id.* The government points out that the jury had before it videotaped evidence of Kar-

---

1. The relevant portion of the government's cross-examination is as follows:

Q [by Mr. Jones]: At the time you were arrested, did you tell the agents that you had been threatened by some men?

Mr. Ragen: Objection, your honor. Irrelevant. Improper foundation.

Mr. Jones: I think it has been—

The Court: No, no. Sustained.

By Mr. Jones:

Q: You testified that during the time Triple–Neck—when you were going back and forth to Triple–Neck, you were doing so because you were being harassed by Dave and Tim?

A: I was going there because I [was] harassed by them?

Q: Yes, you were going there because they were saying they would harm you or your daughter; is that correct?

A: Right.

Q: You also testified that at no time from the time you allegedly met these men to the last time you went to Triple–Neck did you ever tell the police?

A: No, I never told the police.

Q: And that even after the last time you went to Triple–Neck, you never told the police?

A: I had a conversation with a Sheriff in Campo. He didn't remember the conversa-

tion. And I asked him about it, and he didn't remember if it was before or after, and he really was not sure of the conversation.

Q: You never told the police?

A: I never told the police.

Q: You never filed a report?

A: No.

Q: Even though you were scared to death?

A: Right.

Q: Even when you were arrested, you never told anybody about the—

Mr. Ragen: Objection. The court just ruled on that. I think Mr. Jones should be admonished. That is misconduct.

Mr. Jones: I think there was a foundation laid for that question in light of the instruction.

The Court: Mr. Jones, you may ask that question.

By Mr. Jones: Even when you were arrested you didn't tell the police about the—

Mr. Ragen: Objection.

The Court: Overruled.

By Mr. Jones: Even when you were arrested, you didn't tell the police about these men, did you?

A: I told my lawyer about them, but I didn't tell the police.

Q: You never told the police?

A: No.

la's presence at the lab, and that other witnesses corroborated Karla's theory of the defense. The latter fact only serves to underscore the critical nature of Karla's own testimony and the prejudicial effect of the government's use of the post-arrest silence. When, as here, we deal with an error of constitutional dimension, we can hold the error harmless only if it is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We cannot say that that standard was met in this case. The *Doyle* violation requires reversal of Karla's conviction.

Because the violation of the defendant's rights during cross-examination in this case was so clear, and because from other cases presented to this panel it appears that this questioning of a defendant about post-arrest silence was not an isolated incident, we are concerned that appropriate steps be taken to assure a high level of professional advocacy for prosecutors. At oral argument government counsel, who had also been trial counsel, acknowledged that he was unaware of any training program in the district on the constitutional standards for prosecutorial conduct of cross-examination. Such training to impart awareness of constitutional rights is an essential function of an office in whose administration of justice the public trust reposes. *See* I ABA Standards for Criminal Justice, Standard 3–2.6 (2d ed.1980); Model Rules of Professional Conduct Rule 3.8 (1991). We perceive no valid excuse for this violation of Karla Foster's rights and reverse her conviction because of it.

■ The remaining contentions of the parties do not merit extended discussion. Jeff Foster for the first time on appeal challenges the legality of the videotape surveillance in this case as violative of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510–2521. No such objection was made at trial. Under the statute the audio portion of this interception was regulated by the Electronic Communications Privacy Act, *see United States v. Koyomejian*, 970 F.2d 536, 540 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 113

S.Ct. 617, 121 L.Ed.2d 550 (1992), and the requisite standard is that oral communications are not protected absent a reasonable expectation of privacy. 18 U.S.C. § 2510(2). Here the taping of Jeff took place when a number of persons were present and with the consent of the owner of the premises. There was no plain error.

■ The evidence with respect to both defendants was sufficient. Once there is proof of a conspiracy, "evidence of only a slight connection to the conspiracy" is sufficient to convict for participation in the conspiracy. *See United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). Connection to a conspiracy may be inferred from circumstantial evidence. *See United States v. Castro*, 972 F.2d 1107, 1110 (9th Cir.1992). The government's circumstantial evidence included the videotaped meetings, the purchase of hydriodic acid, Karla's provision of methamphetamine to Agent Potter, Karla and Jeff's purchase of hydriodic acid and two one-pound bottles of hydrochloric gas, Jeff's provision of methamphetamine to the agents, and Jeff's purchase of freon. The evidence is sufficient.

■ Evidence of Michael Parkhurst's arrest was admissible because it showed the background and development of the conspiracy. *See United States v. Hill*, 953 F.2d 452, 456–57 (9th Cir.1991). The coconspirator's statements were properly admitted because they were made during and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E); *see also United States v. Garza*, 980 F.2d 546, 553 (9th Cir.1992). The denial of a motion for continuance based upon the absence of a witness was not an abuse of discretion. *See United States v. Tham*, 960 F.2d 1391, 1396 (9th Cir.1992). There was no indication of when that witness might be available and any evidence the witness could have presented would have been cumulative. Appellant has not " 'establish[ed] that the refusal resulted in prejudice to his defense.' " *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1051 (9th Cir.1990) (quoting *United*

*States v. Long*, 706 F.2d 1044, 1053 (9th Cir.1983)).

Jeff Foster's appeal of his 120–month sentence is also denied. The district court properly applied section 2D1.1(a)(3) of the Sentencing Guidelines in calculating the base offense level.

■ The Sentencing Guidelines were amended effective November, 1991, by the addition of Guideline section 2D1.11. This provision involves unlawful distributing, importing, exporting or possessing of a listed chemical. Jeff argues that his case falls into this category, and that his base offense level should be reduced. However, the Sentencing Guidelines have not made section 2D1.11 retroactive. *See* U.S.S.G. § 1B1.10.

Jeff Foster claims that he should have been sentenced to 33 months on the distribution count, but he did not raise this issue below. We deny this appeal. Appellant also argues that he is entitled to a downward departure by four levels under section 3B1.2, for his minimal role in the conspiracy. He points to the absence of testimony that he played a leadership role. However, Jeff has not shown by a preponderance of the evidence that he is entitled to a reduction. *United States v. Howard*, 894 F.2d 1085, 1087–90 (9th Cir.1990).

Since evidence in the record supports a determination of Jeff Foster's ability to pay, *see United States v. Quan–Guerra*, 929 F.2d 1425, 1427 (9th Cir.1991), his fine was proper.

Karla Foster's conviction is REVERSED and Jeffrey Foster's conviction and sentence are AFFIRMED.