# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JORGE ENRIQUE LOPEZ,
        *Defendant-Appellant.*

No. 05-50433

D.C. No.
CR-04-02506-NAJ

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
March 8, 2006—Pasadena, California

Filed November 30, 2006
Amended July 27, 2007

Before: Susan P. Graber, Kim McLane Wardlaw, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson;
Concurrence by Judge Wardlaw

9115

## COUNSEL

Chase Scolnick, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Timothy F. Salel, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## ORDER

The opinion filed on November 30, 2006 is amended as follows:

1. Slip Opinion page 18874, Section II.A. — change the second sentence to read: "Lopez does not challenge all of the prosecutor's comments regarding his silence, as he rightfully concedes that it was appropriate to question or comment on Mr. Lopez's pre-arrest failure to offer his duress explanation.[1]

    [1]Comments referring to post-arrest, pre-*Miranda* silence are also permissible. *See United States v. Baker*, 999 F.2d 412, 415 (9th Cir. 1993)."

2. Slip Opinion page 18875, Section II.A.i., first paragraph, line 8 — change "483 U.S. 756" to "483 U.S. 756 [,762] . . ."

3. Slip Opinion page 18875, Section II.A.i., first paragraph, line 10 — change "post-arrest silence" to "post arrest [, post-*Miranda*] silence . . ."

4. Slip Opinion page 18875, Section II.A.i., second paragraph, last two lines — change

"*United States v. Baker*, 999 F.2d 412, 415 (9th Cir. 1993)" to "*Baker*, 999 F.2d at 415."

5.  Slip Opinion page 18878, first full paragraph, line 3 — insert "regarding Lopez's post-*Miranda* silence" between "elicited testimony" and "and improperly referenced."

6.  Slip Opinion page 18878, first full paragraph, penultimate line — delete the stray opening parenthesis between "agents." and "The . . ."

7.  Slip Opinion page 18878 n.2, line 10 — replace "in order to get away from" with "to escape."

8.  Slip Opinion page 18879, line 3 — change "jury deliberation" to "jury deliberations . . ."

9.  Slip Opinion page 18881, line 16 - change "which concluded" to "that concluded . . ."

10. Slip Opinion page 18882, second full paragraph — change the first sentence to read: "Lopez's challenge to the district court's finding of the fact of his prior conviction is foreclosed by our precedent."

11. Slip Opinion page 18882, second full paragraph — delete all text following the *Delaney* parenthetical and replace with the following:

Lopez also contends that his sentence violates *Apprendi* because of the requirement that the removal subsequent to a prior conviction be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Covian-Sandoval*, 462

F.3d 1090, 1097-98 (9th Cir. 2006); *see also United States v. Zepeda-Martinez*, 470 F.3d 909, 910 (9th Cir. 2006); *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1092 (9th Cir. 2007), *as amended.*

However, the record in this case reflects that Lopez admitted both the date of his prior conviction (2002) and the date of his subsequent deportation (2004). Thus, no *Apprendi* violation occurred when the district court applied the established temporal sequence to enhance Lopez's sentence. *See Covian-Sandoval*, 462 F.3d at 1098 (recognizing that if the removal subsequent to a prior conviction is admitted, no *Apprendi* violation occurs).

We also note the additional fact that only one deportation was presented to the jury in this case. As we recognized in *Martinez-Rodriguez*, 472 F.3d at 1094, in such a circumstance, the jury "necessarily found, beyond a reasonable doubt, that [Lopez] had been previously removed subsequent to his prior aggravated felony convictions." Accordingly, because Lopez admitted the dates of his conviction and subsequent removal and because the jury necessarily found the date of removal, no *Apprendi* violation occurred in this case.

12. Slip Opinion page 18883 — change the last sentence to read: "Finally, because the fact of Lopez's prior conviction was admitted by him and necessarily found by the jury, no *Apprendi* violation occurred."

In addition to these amendments, the opinion is amended to include the attached concurrence by Judge Wardlaw.

With these amendments, the panel has voted to deny the petition for rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petitions for rehearing or petitions for rehearing en banc may be filed.

---

## OPINION

RAWLINSON, Circuit Judge:

In this appeal, we must decide whether the government's impermissible references to Appellant Jorge Enrique Lopez's post-*Miranda* silence mandate reversal of his conviction. Because we conclude that any error was harmless beyond a reasonable doubt and, because none of Lopez's other assertions of error is meritorious, we affirm the conviction and sentence.

### I.  FACTS AND PROCEDURAL HISTORY

On September 17, 2004, Lopez entered the United States and was arrested by a United States Border Patrol Senior Patrol Agent and transported to a Border Patrol Station, where he was processed. Subsequently, Lopez was indicted for being a deported alien found in the United States in violation of 8 U.S.C. § 1326.

At trial, Lopez took the stand and asserted a duress defense. Lopez testified that he entered the United States, hoping to get

arrested and avoid being harmed by a drug dealer. During cross-examination, Lopez was questioned about whether he related the harm that he faced to any of the various people with whom he came into contact before he was transported to the Border Patrol Station. Lopez admitted that he did not tell anyone about the threats. The prosecutor also questioned Lopez about what he told the agents at the Border Patrol Station, where Lopez was processed and given his constitutionally mandated *Miranda* warning by Agent Michael Harrington (Harrington). The relevant portion of the line of questioning began as follows:

> Q. You *never* told any of the border patrol agents about any threats that occurred to you in Mexico, did you?
>
> A. No, sir.
>
> Q. You never told any of the border patrol agents who were there about any guys with knives who were chasing you, did you?
>
> A. No, sir.
>
> Q. You didn't tell any of them about anything about being scared, running for your life into the United States, did you?
>
> A. No, sir.
>
> Q. You didn't tell [Harrington] about, [sic] "I am actually scared because I was running from a guy who tried to kill me." You *never* told him that, did you?
>
> A. No, sir.

(Emphasis added).

Lopez objected to this series of questions. The district court overruled the objection on the basis that the questions were in reference to Lopez's pre-*Miranda* processing.

The prosecutor began his closing argument by noting that while Lopez was at the port of entry, he failed to "indicate to anyone whatsoever that he feared for his life" and reiterated that "there was no person that [Lopez] went to and explained the circumstances." During rebuttal, the prosecutor stated that "[Lopez] was hanging out near to [the] port of entry; [sic] did not tell any of the agents, any of the immigration officers, any of the customs officials, anybody, that he had been threatened whatsoever."

Lopez was convicted and sentenced to thirty months' imprisonment.

## II.  DISCUSSION

### A.  Fifth Amendment

According to Lopez, the Government violated his Fifth Amendment right to remain silent by impermissibly commenting on his post-arrest silence. Lopez does not challenge all of the prosecutor's comments regarding his silence, as he rightfully concedes that it was appropriate to question or comment on Mr. Lopez's pre-arrest failure to offer his duress explanation.[1] *United States v. Beckman*, 298 F.3d 788, 795 (9th Cir. 2002). "We review de novo whether references to a defendant's silence violate his Fifth Amendment privilege against self-incrimination." *United States v. Bushyhead*, 270 F.3d 905, 911 (9th Cir. 2001). "If there was an improper comment on a defendant's silence at trial, violating the Fifth Amendment privilege against self-incrimination, we apply harmless error review." *Id.*

---

[1]Comments referring to post-arrest, pre-*Miranda* silence are also permissible. *See United States v. Baker*, 999 F.2d 412, 415 (9th Cir. 1993).

### i. *Doyle* Error

[1] The Fifth Amendment right to remain silent contains an implicit assurance "that silence will carry no penalty." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). "[I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* (footnote reference omitted). However, "[t]he Supreme Court has subsequently held in *Greer v. Miller*, 483 U.S. 756[, 762] (1987), that there is no *Doyle* violation if the district court promptly sustains a timely objection to a question concerning post arrest[, post-*Miranda*] silence, instructs the jury to disregard the question, and gives a curative jury instruction." *United States v. Foster*, 985 F.2d 466, 468 (9th Cir. 1993), *as amended*, 995 F.2d 882 (9th Cir. 1993) and 17 F.3d 1256 (9th Cir. 1994).

[2] The prosecutor's cross-examination technique consisted of questioning Lopez chronologically about the various people with whom he interacted at the border. However, the inquiries regarding what Lopez failed to tell Harrington violated *Doyle*, because Lopez's contact with Harrington encompassed both pre-*Miranda* and post-*Miranda* periods. By drawing attention to the fact that Lopez "never" mentioned the alleged threats to Harrington, the prosecutor implicated Lopez's silence both pre-*Miranda* and post-*Miranda*. "Even if counsel for the government intended his comments to refer only to post-arrest/pre-*Miranda* silence, the actual language used contains no such limitation and it is highly doubtful that the jury understood any such limitation." *Baker*, 999 F.2d at 415.

Similarly, although for the most part the prosecutor permissibly referenced Lopez's pre-*Miranda* silence during closing argument, he also made overly broad references that impermissibly encompassed Lopez's failure to mention the threats to anyone after the invocation of his right to remain silent.[2]

---

[2]We reject the government's argument that its comments constituted a fair response to testimony that Lopez's counsel invited. The questions

"[A] prosecution closing argument that broadly condemn[s] appellant['s] silence: pre-*Miranda* and post-*Miranda* violate[s] due process." *United States v. Whitehead*, 200 F.3d 634, 639 (9th Cir. 2000) (citation and internal quotation marks omitted).

**[3]** In sum, *Doyle* error occurred when the prosecutor asked Lopez whether he ever told Harrington about the threats he received, and when he argued during closing argument that "[t]here was no duress related to any government agent."

### ii.   Harmless Error

**[4]** The burden of proving a constitutional error harmless beyond a reasonable doubt rests upon the government. *United States v. Williams*, 435 F.3d 1148, 1162 (9th Cir. 2006). "When deciding whether a prosecutor's reference to a defendant's post-arrest silence was prejudicial, this court will consider the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt." *Bushyhead*, 270 F.3d at 913 (citation omitted).

**[5]** The only witness who testified about Lopez's post-*Miranda* silence was Lopez himself, on cross-examination. However, the "quantitative extent" of Lopez's responses regarding his post-*Miranda* silence "was not great in relation to the remainder of his testimony," which focused on Lopez's failure to tell the various people he encountered pre-*Miranda* about the threats he received. *United States v. Velarde-Gomez*, 269 F.3d 1023, 1035 (9th Cir. 2001) (en banc). Fur-

---

posed on direct examination addressed only pre-*Miranda* exchanges, while the government's cross-examination strayed into post-*Miranda* exchanges. Where, as here, the government's comments are far broader than a mere response to defense questioning, the error in commenting on post-*Miranda* silence is not invited. *See Baker*, 999 F.2d at 416 n.5.

ther, "the qualitative extent" of Lopez's testimony implicating his post-*Miranda* silence was limited; the prosecutor's "manner of questioning" focused primarily on Lopez's pre-*Miranda* silence. *Id.* As a result, Lopez's case can be distinguished from other cases where the defendant's post-*Miranda* silence formed the basis of the government's suggested inference of guilt. *Cf. Velarde-Gomez*, 269 F.3d at 1035, and *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir. 1991). By far, the most powerful evidence of Lopez's actions was taken from his pre-*Miranda* silence. If Lopez was in fact running for his life, it would be reasonable to expect that he would disclose that fact in the heat of the moment when he first encountered border agents. That he did not do so supports a permissible inference, based on pre-*Miranda* silence, that he did not disclose that fact because it was not the true state of affairs. *See Beckman*, 298 F.3d at 795. Accordingly, the same inference would follow if the post-*Miranda* questions were eliminated from consideration. Adding these inferences to the stipulated evidence of guilt, *i.e.*, Lopez's presence in the United States after deportation, and his lack of citizenship, harmless error is established beyond a reasonable doubt. *See United States v. Pino-Noriega*, 189 F.3d 1089, 1099 (9th Cir. 1999) (finding error harmless where there was "overwhelming other evidence of [defendant-appellant's] guilt").

**[6]** Consideration of "whether an inference of guilt from silence was stressed to the jury" is also appropriate. *Bushyhead*, 270 F.3d at 913. An inference of guilt is stressed to the jury where the government "draw[s] a direct inference of guilt [from defendant's silence] during its closing argument." *Velarde-Gomez*, 269 F.3d at 1035. Although the prosecutor's broad rebuttal argument encompassed Lopez's post-*Miranda* silence, he did not "draw[ ] a direct inference of guilt . . . [or] use[ ] the testimony about [Lopez's] [post-Miranda] silence as [his] principal means of meeting [the government's] burden." *Id.* Rather, the reference was made contemporaneously with references to Lopez's pre-*Miranda* silence and Lopez's state-

ment during his testimony that he wanted to be arrested so he would not have to spend another night on the streets. This record does not support a conclusion that post-*Miranda* silence was "stressed." *Cf. Whitehead*, 200 F.3d at 638-39 (concluding that prosecutor stressed the defendant's silence where all references were to the period after defendant invoked his right to remain silent).

As discussed, the evidence that Lopez faced no duress was powerfully incriminating.[3] Even though the prosecutor impermissibly elicited testimony regarding Lopez's post-*Miranda* silence and improperly referenced Lopez's post-*Miranda* silence during closing argument, it was permissible for the jury to consider Lopez's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt. *See Beckman*, 298 F.3d at 795. Therefore, the jury could permissibly consider the powerfully incriminating admission that Lopez mentioned nothing about the purported threats to: (1) the border agents whom he encountered at the Calexico port of entry, (2) the security officer, or (3) the arresting border agents. The jury could also consider Lopez's powerfully incriminating, pre-*Miranda* statement, not that he was threatened, but that he "didn't want to spend another night in the streets."

**[7]** We also examine the length of jury deliberations when assessing harmlessness. "Longer jury deliberations weigh

---

[3]The evidence of Lopez's guilt on the 8 U.S.C. § 1326 charge was overwhelming. Lopez stipulated that he was an alien who had previously been deported and who did not have consent to re-enter the United States. *See United States v. Pina-Jaime*, 332 F.3d 609, 611 (9th Cir. 2003) (noting that "[a] deported alien violates 8 U.S.C. § 1326(a)(2) if he 'enters, attempts to enter, or is at any time found in' the United States unless 'the Attorney General has expressly consented to such alien's reapplying for admission.' ") (citation and alteration omitted). *See also United States v. Solorzano-Rivera*, 368 F.3d 1073, 1080 (9th Cir. 2004) (noting that jumping over a border fence to escape harassers constituted voluntary entry); *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1047 (9th Cir. 1990) (finding harmless error beyond a reasonable doubt in view of overwhelming evidence of guilt under 8 U.S.C. § 1326).

against a finding of harmless error because lengthy deliberations suggest a difficult case." *Velarde-Gomez*, 269 F.3d at 1036 (citations, alterations and internal quotation marks omitted). In this case, the jury deliberated for approximately two and one-half hours, suggesting that any error in allowing testimony or commentary on Lopez's post-arrest silence was harmless. *Cf. id.* (noting that the jury deliberated for four days, thereby supporting an inference that the impermissible evidence affected jury deliberations).

### iii. Due Process

**[8]** No *Doyle* error occurs "if the district court promptly sustains a timely objection to a question concerning post-arrest silence, instructs the jury to disregard the question, and gives a curative jury instruction." *Foster*, 985 F.2d at 468. The record reveals two such instances during the trial of this case.[4] The trial court acted promptly to prevent "the inquiry that *Doyle* forbids" by "explicitly sustain[ing] an objection to the . . . question[s] that touched upon [Lopez's] post-arrest silence [and] . . . specifically advis[ing] the jury that it should disregard any questions to which an objection was sustained." *Greer*, 483 U.S. at 764 (footnote reference omitted). Nevertheless, even in the absence of a *Doyle* violation, the prosecutor's "attempt[s] to violate the rule of *Doyle* by asking . . . improper question[s] in the presence of the jury" constitute prosecutorial misconduct, and that misconduct warrants reversal where it "may [have] so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process."

---

[4]After being "admonish[ed] . . . not to go into any post-invocation of the statements," the prosecutor asked Lopez, "[t]he first time you told any government agent that you feared for your safety because there was a man with a knife was yesterday, correct?" The single question was followed by an objection that was sustained. The court also struck the answer and admonished the jury to disregard the answer. During re-cross-examination, the prosecutor asked Lopez "[y]ou told no one on September 17th that anyone had threatened you with a knife?" The judge *sua sponte* excluded that question, which was never answered.

*Id.* at 765 (citation omitted). Because the district court sustained the *Doyle* objections, struck the one answer, admonished the jury to disregard that answer, and instructed the jury that "questions . . . by lawyers are not evidence" and that "testimony that has been excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered[,]" the prosecutor's improper questions did not violate Lopez's due process rights. *See id.* at 766 (holding that there was no due process violation occasioned by the prosecutor's attempt to violate *Doyle* on closely analogous facts).

### B.   Jury Instruction—Burden of Proof

Lopez challenges the district court's jury instruction that Lopez was "presumed innocent unless and until proved guilty beyond a reasonable doubt," claiming that the instruction unconstitutionally abandoned the presumption of innocence. "We review de novo a claim that a jury instruction violates due process," *United States v. Tirouda*, 394 F.3d 683, 687 n.1 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 1462 (2006), (citation omitted), by "creating an unconstitutional presumption or inference." *Tapia v. Roe*, 189 F.3d 1052, 1056 (9th Cir. 1999) (citation omitted).

**[9]** "Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004) (citation omitted). "Any jury instruction that reduces the level of proof necessary for the Government to carry its burden is plainly inconsistent with the constitutionally rooted presumption of innocence." *Id.* (alterations, citation and internal quotation marks omitted). "Any challenged instruction must be considered in light of the full set of jury instructions and the trial record as a whole." *Id.* at 821 (citation omitted).

**[10]** Before trial began, the judge instructed the jury to presume Lopez "innocent unless and until proved guilty beyond a reasonable doubt." At the close of trial, the judge similarly instructed the jury that Lopez "is presumed to be innocent . . . [and] [t]he government has the burden of proving every element of the charge beyond a reasonable doubt." He later reiterated that "the government must prove each of the . . . elements [of 8 U.S.C. § 1326(a)] beyond a reasonable doubt." We have expressly held that use of the phrase "unless and until" adequately informs the jury of the presumption of innocence. *See United States v. Brady*, 579 F.2d 1121, 1131 (9th Cir. 1978) (upholding instructions that concluded with the language, "unless and until outweighed by evidence in the case to the contrary, the law presumes that a person is innocent of crime or wrong"); *see also Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 1142 (2006), and 126 S.Ct. 1145 (2006). Moreover, when the instructions are considered as a whole, it is not reasonably likely that the jury interpreted the "unless and until" phrase as shifting the burden of proof to Lopez. *See Bruce v. Terhune*, 376 F.3d 950, 955-56 (9th Cir. 2004) (per curiam) (noting that there is no error where "the instructions as a whole made clear to the jury that the prosecution bore the burden of proving each element of the crime beyond a reasonable doubt") (citation omitted).

## C.   Sentence

For the first time on appeal, Lopez challenges his sentence. Lopez asserts that the district court erred by imposing a sentence in excess of the two-year maximum set forth in 8 U.S.C. § 1326(a). Lopez contends that the enhancement pursuant to 8 U.S.C. § 1326(b) was impermissibly predicated on a prior felony conviction that was not proved to a jury or admitted by Lopez. Lopez urges us to conclude that the United States Supreme Court's holding in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), has been narrowed by subsequent rulings, calling into doubt the enhancement in this case.

A claim raised for the first time on appeal that a sentence violates a defendant-appellant's constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is reviewed for plain error. *United States v. Castillo-Rivera*, 244 F.3d 1020, 1024 (9th Cir. 2001). "Under the plain error standard, [Lopez] must establish an error, that was plain, and that affected his substantial rights." *United States v. Buckland*, 289 F.3d 558, 563 (9th Cir. 2002) (en banc).

Lopez's challenge to the district court's finding of the fact of his prior conviction is foreclosed by our precedent. *See United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005) (noting that this Court continues to be bound by the Supreme Court's holding in *Almendarez-Torres*), *cert. denied*, 126 S.Ct. 1911 (2006); *see also, United States v. Delaney*, 427 F.3d 1224, 1226 (9th Cir. 2005) (stating that "[t]he Supreme Court has made clear that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt or admitted by the defendant to satisfy the Sixth Amendment").

Lopez also contends that his sentence violates *Apprendi* because of the requirement that the removal subsequent to a prior conviction be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1097-98 (9th Cir. 2006); *see also United States v. Zepeda-Martinez*, 470 F.3d 909, 910 (9th Cir. 2006); *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1092 (9th Cir. 2007), *as amended*.

However, the record in this case reflects that Lopez admitted both the date of his prior conviction (2002) and the date of his subsequent deportation (2004). Thus, no *Apprendi* violation occurred when the district court applied the established temporal sequence to enhance Lopez's sentence. *See Covian-Sandoval*, 462 F.3d at 1098 (recognizing that if the removal subsequent to a prior conviction is admitted, no *Apprendi* violation occurs).

**[11]** We also note the additional fact that only one deportation was presented to the jury in this case. As we recognized in *Martinez-Rodriguez*, 472 F.3d at 1094, in such a circumstance, the jury "necessarily found, beyond a reasonable doubt, that [Lopez] had been previously removed subsequent to his prior aggravated felony convictions." Accordingly, because Lopez admitted the dates of his conviction and subsequent removal and because the jury necessarily found the date of removal, no *Apprendi* violation occurred in this case.

## III.   CONCLUSION

The prosecutor impermissibly commented on Lopez's right to remain silent in violation of the rule articulated in *Doyle*. However, the *Doyle* error was harmless beyond a reasonable doubt because of the limited reference to Lopez's post-*Miranda* silence and the overwhelming evidence of Lopez's guilt. Although the prosecutor's questions were impermissible, Lopez's due process rights were not violated because the questions were immediately objected to, and the district court gave appropriate limiting instructions. It is not reasonably likely that the jury interpreted the district court's instruction that Lopez was "presumed innocent unless and until proved guilty" as shifting the burden of proof to Lopez. Finally, because the fact of Lopez's prior conviction was admitted by him and necessarily found by the jury, no *Apprendi* violation occurred.

**CONVICTION AND SENTENCE AFFIRMED.**

---

WARDLAW, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment and in Parts I, II-A, II-B and II-C(i) of the majority opinion. I disagree with the majority that Lopez's testimony can be fairly characterized as an admission

as to the date of his removal, and the date certainly was not proved to the jury. Although I would find *Apprendi* error, however, I agree that we must affirm Lopez's sentence because its imposition was not plain error.

To trigger the sentencing enhancement under 8 U.S.C. § 1326(b)(2), "an alien must first be convicted of an aggravated felony, then be removed, and then attempt to reenter, in that order." *United States v. Covian-Sandoval*, 462 F.3d 1090, 1097 (9th Cir. 2006). Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, the fact of a prior removal must be "proved beyond a reasonable doubt to a jury or admitted by the defendant." *Covian-Sandoval*, 462 F.3d at 1098. The majority finds an admission as to the date of removal from the following ambiguous exchange:[1]

| Prosecutor: | In fact, you had been deported four times, correct? |
|---|---|
| Defense counsel: | Objection, your honor; 404(b). |
| The Court: | Sustained. |
| Prosecutor: | You testified yesterday and admitted that you had been convicted of a felony? |
| Lopez: | Yes, sir. |
| Prosecutor: | And at the summer of 2004, you were in Mexicali? |
| Lopez: | Yes, sir. |

---

[1]Lopez had earlier admitted that he was convicted of a felony in 2002. Therefore, to trigger the sentencing enhancement under § 1326(b)(2), Lopez would have to have been removed at some point subsequent to that conviction.

| Prosecutor: | Had you been deported from the United States? |
|---|---|
| Lopez: | Yes, sir. |

Lopez responds affirmatively to questions of whether he 1) was in Mexicali in the summer of 2004, and 2) had been deported from the United States. His presence in Mexico in 2004 does not establish that he was deported in that year. His answers would have been the same even if he had been deported years earlier. *Cf. United States v. Lopez*, 625 F.2d 889, 897 (9th Cir. 1980) (finding insufficient evidence and reversing conviction where defendant's alleged admission was "[a]t most . . . ambiguous.").[2]

The parties stipulated to the fact, but not the *date*, of Lopez's removal. Putting aside the exchange quoted above, nothing presented to the jury sheds light on whether this removal was *subsequent* to his conviction of an aggravated felony, as required for the § 1326(b)(2) enhancement to apply. Therefore, I would find *Apprendi* error because the fact of his 2004 removal was never admitted or proved to the jury. *Id.*

Because Lopez raises this *Apprendi* argument for the first time on appeal, review is under the plain error standard. *Id.* at 1093. To prevail, Lopez must therefore establish (1) an error, (2) that was plain, and (3) that affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if those requirements are satisfied, we may exercise our discretion to correct the forfeited error only if it " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *United States v. Cabaccang*, 481 F.3d 1176, 1184 (9th Cir. 2007) (quoting *United States v. Evans-Martinez*, 448 F.3d 1163, 1166 (9th Cir. 2006)).

---

[2]Despite the defendants' shared last name, they are unrelated.

We have already held that "the enhancement of [a § 1326] sentence, based on the factual finding of a subsequent removal, constitute[s] plain error." *Covian-Sandoval*, 462 F.3d at 1098. However, Lopez's substantial rights were not violated, and thus he cannot obtain relief, because he was not prejudiced "in a manner that affected the outcome of the . . . proceedings." *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc) (internal quotation marks omitted). In *Covian-Sandoval*, we noted that the inquiry is "whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," and that, "[c]ritically, the defendant bears the burden of raising a reasonable doubt as to the fact [of prior removal]." 462 F.3d at 1098.

We held that Covian had not met this burden because he had "practically concede[d]" that he was removed subsequent to his conviction for an aggravated felony. *Id*. Specifically, he had never objected to the allegation of the subsequent removal contained in his presentence report. *Id*. Similarly, Lopez never objected to the allegation of a 2004 deportation in his presentence report.

"Most significantly, [Lopez's] arguments to the sentencing court effectively conceded that a sentence enhancement under § 1326(b) would be appropriate." *Id*. Had Lopez not been removed subsequent to an aggravated felony conviction, the statutory maximum sentence would have been two years. 8 U.S.C. § 1326(a). But at sentencing, Lopez's counsel "agree[d]" with the district court's tentative sentence of 30 months, a sentence exceeding the § 1326(a) statutory maximum but consistent with an enhanced sentence under § 1326(b). By accepting the district court's tentative sentence, Lopez "effectively conceded" the relevant chronological sequence of conviction and removal. *Covian-Sandoval*, 462 F.3d at 1098.

Therefore, Lopez cannot meet his burden of showing that his substantial rights were violated. We should affirm the sentence because its imposition was not plain error under *Olano*.