UNITED STATES of America,
Plaintiff—Appellee,

v.

Adrian MACIAS–CURIEL, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Adrian Ivan Macias, Defendant—
Appellant.

Nos. 06–50655, 07–50027.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 2008.

Filed Jan. 30, 2009.

Bruce R. Castetter, Esq., Assistant U.S., Kyle W. Hoffman, Anna Lou T. Tirol, Roger W. Haines, Jr., Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

Lewis C. Muller, Attorney at Law, Santee, CA, for Defendant–Appellant Adrian Macias–Curiel.

James Fife, Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant Adrian Ivan Macias.

Before: PREGERSON, D.W. NELSON, and FERNANDEZ, Circuit Judges.

## MEMORANDUM *

Adrian Macias–Curiel ("Curiel") appeals his jury conviction of, and Adrian Ivan Macias ("Macias") appeals his conviction and sentence for, importation of marijuana and possession of marijuana with intent to distribute. *See* 21 U.S.C. §§ 841, 952, 960. Curiel contends the district court improperly admitted testimony about prior incidents at the Calexico port of entry. Macias argues that (1) the government violated his Fifth Amendment rights by eliciting testimony about his post-Miranda silence; (2) the district court erred by denying his motion to sever his trial from that of Curiel; and (3) the district court erred when it denied him safety-valve relief from the statutory mandatory minimum sentence.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

For the reasons discussed below, we affirm the district court.

■ We first address Curiel's claim that the district court erred in allowing evidence of prior incidents in which he crossed the border in vehicles with empty, non-factory manufactured floor compartments. Evidence of prior bad acts may be admissible to provide "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Here the court properly allowed evidence of an October 20, 2005 incident. That incident occurred just three weeks before the crossing that led to the subject's arrest and subsequent trial, and was sufficiently similar to the offense charged that it tended to prove the material fact that Curiel knew of the hidden compartment and the contraband therein. *See United States v. Smith,* 282 F.3d 758, 768 (9th Cir.2002) (requiring materiality, sufficiency, similarity, and temporal proximity for the admission of prior wrongs). Furthermore, this evidence was introduced not by the government, but by Macias, and was highly relevant to Macias' third-party culpability defense. *See United States v. Vallejo,* 237 F.3d 1008, 1023 (9th Cir.2001) ("[F]undamental standards of relevancy ... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged.") (internal quotation marks omitted). Curiel also challenges the purported admission of evidence tied to an incident at the border on May 6, 2006, but that claim is moot, because the court denied the government's request to introduce that evidence.

We now address Macias' arguments in turn. To support his claim of a Fifth Amendment violation, Macias claims the government made improper references to his post-arrest, post-Miranda silence in violation of *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, in *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Supreme Court stated that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." "As our court has interpreted *Charles,* once a defendant makes post-arrest statements that '*may arguably* be inconsistent with the trial story', he has raised a question of credibility." *United States v. Makhlouta,* 790 F.2d 1400, 1404 (9th Cir.1986) (quoting *United States v. Ochoa–Sanchez,* 676 F.2d 1283, 1286 (9th Cir.1982)). Under this circuit's precedent, the government may "probe this arguable inconsistency by inquir[ing] into what was not said at arrest." *Id.* at 1404–05 (internal quotation marks and citations omitted). When a defendant chooses to speak, then, the "prosecutor may point out inconsistencies," as well as the "omission of critical details." *Leavitt v. Arave,* 383 F.3d 809, 827 (9th Cir.2004).

Here, testimony indicates that after Macias was arrested and read his *Miranda* rights, he told customs officers that he had crossed the border into Mexico, where Curiel was waiting with the dune buggy and trailer that was later found to contain marijuana. Macias made these statements during a twenty minute interview, which he ended by invoking his right to remain silent. At trial, however, Macias testified that his father did not meet him with the dune buggy and trailer. Instead he said they had traveled to a race track and obtained the buggy and trailer from three men he had never met before. En route to the track, Macias testified, he and his

father had also visited two female relatives, and eaten at a taco stand.

■ Macias argues that the government's response to his testimony led to three purported *Doyle* violations. First, during questioning by the defense, a customs agent testified that, if he had the opportunity, he would have asked Macias more questions regarding his knowledge about the marijuana. Fearing that this statement might implicate Macias' invocation of his right to remain silent, the trial judge promptly struck the testimony from the record, ordered jurors to disregard the testimony, and polled the jurors to ensure they were able to do so. This court has stated that no *Doyle* error occurs when "the district court promptly sustains a timely objection to a question concerning post-arrest silence, instructs the jury to disregard the question, and gives a curative jury instruction." *United States v. Lopez*, 500 F.3d 840, 846 (9th Cir.2007) (holding no due process violation occurred where the district court sustained *Doyle* objections, struck the answer, and admonished the jury to disregard the answer) (citing *United States v. Foster*, 985 F.2d 466, 468 (9th Cir.1994)).

■ Second, on cross-examination, the government asked Macias whether he had told the agents about the relatives he said he visited, or the stop at a taco stand, or the trip to the races where he now said his father had purchased the buggy and borrowed the trailer from men he had never met before. The district court did not err in allowing these questions, because they focused on critical omissions and arguable inconsistencies between the statements Macias made after his arrest and his testimony at trial. This line of questioning was proper because "[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a prior

inconsistent statement." *Charles*, 447 U.S. at 409, 100 S.Ct. 2180.

■ Third, the prosecution's closing statement did come dangerously close to an improper comment on Macias' post-arrest silence, urging jurors to consider, in determining guilt or innocence, "not only what was said but what wasn't said . . . ." However, the prosecutor was not commenting on Macias' invocation of his right to remain silent; rather the government was properly highlighting critical omissions within the statements Macias made to agents when he elected to speak.

Admittedly, this case is closer, and more complex, than most cases in this arena, because Macias spoke first, and then invoked his right to remain silent. In such a case, it becomes difficult to divine precisely what statements a person in custody would be expected to include in a statement. *See Ochoa–Sanchez*, 676 F.2d at 1286 (noting, in dicta, that "[i]f defendant had invoked his right to remain silent in response to *Miranda* warnings, questioning that asked why certain information had not been revealed would have been improper.") However, this is not a case like *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir. 1991), where the effect of statements made at trial "was to suggest to the jury that Newman must have been guilty because an innocent person would not have remained silent." The effect of the statements at Macias' trial was not to suggest that his silence implicated his guilt. Instead, the effect was to undermine his credibility—to attack the discrepancies between what Macias told the officers and what he testified to in court. "[T]alking is not silence," and the district court did not err when it allowed the prosecutor to "explore [Macias'] speech and its implications." *Leavitt*, 383 F.3d at 827.

The dissent argues that this Court's recent decision in *United States v. Caruto*,

532 F.3d 822 (9th Cir.2008), requires us to find that the prosecutor's closing argument resulted in a *Doyle* violation. In *Caruto,* this Court held that "the prosecutor's argument, emphasizing omissions from Caruto's post-arrest statement that exist only because she invoked her right to counsel under *Miranda,* constitutes a violation of Caruto's right to due process." *Id.* at 824. In *Caruto,* prosecutors acknowledged that "the alleged inconsistencies ... were omissions attributable to Caruto's invocation of her *Miranda* rights." *Id.* at 830. In other words, the alleged inconsistencies between Caruto's trial testimony and post-arrest interview were due to "what she *did not* say in her post-arrest statement," and not due to what she *did* say during her post-arrest statement. *Id.* (emphasis added). As such, the prosecutor's argument was impermissibly "designed to draw meaning from silence." *Id.* (quoting *Charles,* 447 U.S. at 409, 100 S.Ct. 2180). "Caruto could not fully explain why her post-arrest statement was not as detailed as her testimony at trial without disclosing that she had invoked her *Miranda* rights." *Id.*

This case is distinguishable. Here, the testimony at trial was truly inconsistent with what Macias said during the post-arrest interview: when he met with the agents, Macias said he met his father just after he crossed the border into Mexico, and his father had in his possession the dune buggy and trailer in which the drugs were later discovered. At trial, by contrast, Macias testified that his father did not have the buggy and trailer when they met. Rather, they first had to visit a pair of female relatives and eat at a taco stand before going to a racetrack, where his father obtained the buggy and trailer from three men Macias said he had never seen before. In other words, the alleged inconsistencies between Macias' trial testimony and post-arrest interview were due to what

*he said* and not due to what *he did not say.* This is fundamentally unlike *Caruto,* where the defendant's "post-arrest statement and her trial testimony were not inconsistent." *Id.* at 831. As such, although Macias did invoke his *Miranda* rights after giving a post-arrest statement, this case is much closer to *Charles* and *Makhlouta:* because Macias made a post-arrest statement that was arguably inconsistent with his trial testimony, he has raised a question as to his credibility such that the government may "probe this arguable inconsistency by inquir[ing] into what was not said at arrest." *Makhlouta,* 790 F.2d at 1404–05 (internal quotation marks and citations omitted); *see Charles,* 447 U.S. at 408, 100 S.Ct. 2180.

■ Nor did the district court err in denying Macias' motion to sever his trial from Curiel's. Any "spillover" evidence implicating Curiel was not unduly prejudicial, and any prejudice was cured by the district court's repeated instructions to the jury to consider such evidence only against Curiel. *See United States v. Cuozzo,* 962 F.2d 945, 950 (9th Cir.1992) (assessing prejudice in light of the jury's ability to compartmentalize the evidence as it related to separate defendants, and emphasizing the importance of the judge's diligence "in instructing the jury on the purposes to which various strands of evidence may be put.").

■ Finally, the district court did not err when it denied Macias safety-valve relief from the statutory mandatory minimum sentence. Macias was "obligated to show by a preponderance of the evidence, that [h]e qualified for the safety valve provision[ ]," *United States v. Washman,* 128 F.3d 1305, 1307 (9th Cir.1997). Yet he failed to demonstrate that he had "truthfully provided to the Government all information and evidence [he] ha[d] concerning

the offense or offenses." *See* 18 U.S.C. § 3553(f)(5). Macias consistently denied knowledge of the marijuana found in the trailer. Neither the government nor the jury credited this testimony, and the district court did not commit clear error in sharing their conclusion and denying safety-valve relief.

AFFIRMED.

PREGERSON, J., concurring in part and dissenting in part:

I concur in the majority disposition, except in its treatment of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which I believe the majority misapplies. *Doyle* held that "it would be fundamentally unfair and a deprivation of due process" to allow a *Mirandized* defendant's silence at the time of arrest to be used to impeach his exculpatory testimony proffered for the first time at his criminal trial. 426 U.S. at 618, 96 S.Ct. 2240. Our decision in *United States v. Caruto,* 532 F.3d 822 (9th Cir.2008), which correctly applied *Doyle,* should control the outcome in this case.

In *United States v. Caruto,* defendant Elide Caruto was stopped at the Calexico, California port of entry when Customs and Border Protection officers discovered cocaine hidden in the gas tank of her truck. 532 F.3d at 824. After Immigration and Customs Enforcement Special Agents read Caruto her *Miranda* rights, she signed a waiver and agreed to make a statement. *Id.* Five to seven minutes later, however, Caruto invoked her *Miranda* rights and interrogation stopped. *Id.*

At Caruto's trial, Agent Matthew Kelley testified that defendant Caruto, during her interview, stated that she loaned the truck to unknown individuals in Mexicali three to four weeks before her arrest. *Id.* at 824. Agent Kelley further testified that Caruto stated that she got the truck back on the day of her arrest and that she was driving to Los Angeles when the border agents stopped her. *Id.* Agent Tim Ballard also testified that Caruto stated that unknown individuals told her to drive the truck to Los Angeles. *Id.* at 825. After making these statements to the agents, Caruto invoked her *Miranda* rights and the interrogation stopped.

Caruto's testimony differed from that of the agents. She testified that the night before her arrest, a friend's brother-in-law, Jose Jimenez, indicated that he wanted to buy the truck in Mexicali. *Id.* Jimenez had seen the truck when Caruto's friend borrowed it for a short time three weeks earlier. *Id.*

Caruto further testified that she drove her truck to Mexicali the next day and showed it to Jimenez. *Id.* Jimenez told her he wanted to take the truck to a mechanic and asked to borrow it. *Id.* When Jimenez returned the truck to Caruto later that afternoon, he told her that "he would pay her $1,000 for the truck right away and he would pay her the rest" if she drove it to Los Angeles. *Id.* Caruto did not accept Jimenez's offer and drove the truck home toward Calexico, where she was stopped by the border agents. *Id.*

During closing argument in *Caruto,* the prosecutor focused on the discrepancies between the agents' accounts of Caruto's statements made after she waived her *Miranda* rights and before she invoked those rights, and Caruto's account of the facts when she testified at trial. The prosecutor argued to the jury:

[L]et's look at what she said to Agent Kelley and Agent Ballard at the port of entry on the date of her arrest. What did she say about the truck? She said that she owned the truck for approximately one year and that she had given it away to unknown individuals—un-

known individuals three weeks to a month prior to the date of her arrest, that she got it back that day, the day of her arrest, and was told by these unknown individuals to drive the truck to Los Angeles. . . . *She didn't say* that it was Jose Jimenez who gave her the truck, and by the way, here's his phone number because I just spoke to him a few hours ago. . . . *She didn't say* I was selling the truck. No, what she said to agents Kelley and Ballard was that unknown individuals had given her—or had taken her truck three weeks to a month earlier and that she got it back that day and was told to drive it to Los Angeles. *Id.* at 826 (emphasis added).

We reversed Caruto's conviction on *Doyle* grounds. *Id.* at 828. We held that *Doyle* was violated because "Caruto could not fully explain why her post-arrest statement was not as detailed" as her trial testimony "without disclosing that she had invoked her *Miranda* rights." *Id.* at 830. We explained that Caruto's case was different from any other *Doyle* case that we had previously examined because, unlike the defendants in those cases, Caruto initially waived her *Miranda* rights, but then invoked them after giving the agents a brief statement. *Id.* at 828. Applying the principles of *Doyle* to such a situation for the first time, we explained that, in contrast to the defendants in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), *United States v. Ochoa–Sanchez,* 676 F.2d 1283 (9th Cir. 1982), and *United States v. Makhlouta,* 790 F.2d 1400 (9th Cir.1986)—three cases relied upon by the majority [1]—"Caruto did

not simply fail to answer a specific question. Rather, she specifically invoked her *Miranda* rights and stopped the interview altogether." *Caruto,* 532 F.3d at 829. We further noted that, during closing argument, "the prosecution commented on [Caruto's] failure to explain further what happened. *This is the type of penalty for exercising one's Fifth Amendment rights that Doyle prohibits.*" *Id.* (emphasis added). Because the prosecutor's closing argument "invited the jury to draw meaning from silence," we held that Caruto's due process rights were violated. *Id.* at 831.

The facts of *Caruto* are remarkably similar to the facts presented here. Like defendant Caruto, Macias was stopped at the Calexico port of entry and was interviewed by Agent Ballard, the same agent who interviewed Caruto.[2] Macias initially signed a waiver of his *Miranda* rights and submitted to questioning, but then invoked his *Miranda* rights and stopped answering questions after about 20 minutes.

At trial, the agents in the instant case, including Agent Ballard, testified that Macias told them that, when he crossed the border into Mexico, his father was waiting with a car, a dune buggy and a trailer. But at his trial Macias testified his father did not have the dune buggy and trailer when he met Macias at the border. Instead, Macias told the jury that, after meeting at the border, Macias and his father drove to visit two female relatives and stopped at a taco stand. They then traveled to a race track, where Macias's father got the buggy and trailer from three men that Macias had never met.

During closing argument, Macias's prosecutor emphasized the differences between

---

**1.** The majority's reliance on *Charles, Makhlouta,* and *Ochoa–Sanchez* is misplaced. These cases are distinguishable from Macias's case because, just as in *Caruto,* Macias invoked his *Miranda* rights during the interrogation, which then ceased. *See Caruto,* 532

F.3d at 828–830 (distinguishing *Charles, Makhlouta,* and *Ochoa–Sanchez* because they were "non-invocation case[s]").

**2.** Agent Kelley did not participate in this interview.

the agents' testimony about the statements Macias made to agents before he invoked his *Miranda* rights and Macias's own testimony at trial. Moreover, just as in *Caruto*, the prosecutor in Macias's case focused on what Macias did not tell the agents when he was first interrogated:

> Think about the answers that [Macias] did give the agents, *what little he did tell the agents*, and most importantly, ladies and gentleman, think about this: He knew at the time he was interviewed by agents that he was arrested for the transportation of narcotics. This was the very first time he'd been arrested. This was the first time he'd been placed in a cell. *Think about what he didn't tell the agents* when he got to the interview room and talked to them. You heard him on the stand. You heard him under cross-examination.
>
> *He didn't tell the agents* look, we just went to the sand dunes, and my dad just bought me this trailer, or this dune buggy, from three unknown men I've never seen before in my life. Look, we just got this buggy 20 minutes ago. Look, I didn't know anything about this. These men lent me this—these men lent us that trailer, and actually they're going to pick it up from us later, so maybe you can get in contact with them when they come up and pick up the trailer later from our house....
>
> *    *    *
>
> *He didn't say any of that* ladies and gentlemen. *He didn't say anything* about where they had just gotten the dune buggy, where they had just gotten the trailer, nothing. Think about all of that. Think about his demeanor, and think about what he said and what *he didn't say*, and how many holes his story has. . . .
>
> But it's very important that you also think about not only what was said but how it was said, not only what was said but *what wasn't said*, and in so doing you will determine the guilt or innocence of the defendants.

(Emphasis added).

There is no meaningful distinction between *Caruto* and this case.[3] In both cases, defendants Caruto and Macias initially waived their *Miranda* rights, but later invoked those rights after submitting to a brief period of interrogation. Both defendants then testified at trial and placed the blame for the drugs elsewhere. The trial testimony of defendant Caruto and defendant Macias differed from the trial testimony of the agents concerning the defendants' *Mirandized* statements. In *Caruto*, we reasoned that these differences were attributable to the fact that Caruto did not have the opportunity to give a detailed pre-arrest statement because she invoked her *Miranda* rights after a brief period of interrogation. Contrary to the majority's view, that same reasoning should apply to Macias's virtually identical case. To hold otherwise would render meaningless Macias's decision also to invoke his *Miranda* rights after a brief period of interrogation.

Moreover, the prosecutor's closing argument in this case was just as improper as the closing in *Caruto*. In the case before us, the linchpin of the prosecutor's argument was that Macias had not told the agents all the details of the story he testi-

---

**3.** The majority argues that *Caruto* is distinguishable because, here, the prosecutor focused on alleged inconsistencies between Macias's post-arrest statement and his trial testimony. This is a distinction without a difference. Although the prosecutor may have attacked alleged inconsistencies in Macias's statements, the prosecutor did so by heavily focusing on what Macias "did not say." The prosecutor was not, as the majority argues, just attacking Macias's prior inconsistencies, the prosecutor was also improperly attacking his silence.

58

fied to at trial. The prosecutor repeatedly encouraged the jury to *think about what Macias did not say.* The prosecutor even went as far as to say that the jury could "determine [Macias's] guilt or innocence" by thinking "not only of what was said but what wasn't said." This unambiguous demand that the jury "draw meaning from silence" flagrantly violates both the letter and spirit of *Doyle* and is identical to the argument that we found unconstitutional in *Caruto. Id.* at 831.

*Doyle* establishes that a defendant who wishes to invoke his *Miranda* right to terminate a custodial interrogation may do so without fear that his silence will later be used against him. *Caruto* is consistent with this principle; the majority's decision in this case is not. Defendant Macias is entitled to a new trial free from blatant constitutional error. Accordingly, I dissent.